ENGEL, TRUSTEE, ETC. *v.* MATHLEY.

[No. 16,859. Filed May 10, 1943. Rehearing denied June 1, 1943. Transfer denied June 16, 1943.]

*Prentice & Prentice* and *Fox & Fox,* all of Jefferson-ville, for appellants.

*Jonas G. Howard* and *James W. Sweeney,* both of Jeffersonville, *James E. Tucker,* of Liberty, and *Lutz, Johnson & Lutz,* of Indianapolis (*Ellis Deibel,* of Jeffersonville, of counsel), for appellee.

DRAPER, J.—This was an action filed August 29, 1939 by the appellee versus the appellant, individually and as trustee of Silver Creek School Township for a judgment declaring her to be a permanent teacher in that township and for a mandatory injunction to compel appellant to permit her to teach in that township during the school year of 1939-1940 under a definite contract to teach.

The appellant answered in five paragraphs, the first

being a general denial and the other paragraphs being based upon the contention that appellee had herself cancelled, abandoned and rescinded her tenure contract and that if wrongfully breached by another she had acquiesced in the breach thereof and by her delay in asserting her rights had slumbered thereon and by laches is now barred from obtaining the equitable relief prayed for. The issues were closed by appellee's reply in general denial to appellant's affirmative paragraphs of answer.

The cause was tried by the court without the intervention of a jury, all of the facts being stipulated in writing by the parties, and the trial court found for the appellee, affirming her status as a permanent teacher and ordering the appellant to enter into an indefinite contract with appellee for the school year of 1940-1941 and subsequent years.

Appellant's motion for a new trial, asserting that the finding and decision of the court was (1) not sustained by sufficient evidence and (2) contrary to law, was filed and overruled and this appeal properly perfected.

The agreed statement of facts shows that the appellee, then a tenure teacher of Silver Creek School Township, was shortly before July 29, 1931, in response to her request for a teacher's contract, notified by one E. Raymond Stoner, the then trustee, that he would not employ her and on July 29, 1931, he mailed to her the following notice:

"Office of Silver Creek Township Trustee.
E. Raymond Stoner,
Speed, Indiana.

July 29, 1931.

Mrs. Clara Weber Mathley,
Sellersburg, Indiana.
Dear Madam:
Please be advised that on August 28, 1931, at

1:00 P. M. at the Silver Creek Township High School, your contract with the Silver Creek School Township will be considered cancelled.

Yours very truly,<br>(Signed)   E. Raymond Stoner.

ERS:MT."

This was the only notice served upon her and at the time there was no decrease in the number of teaching positions in that township.

Immediately after the receipt of this notice she called upon Stoner and demanded that he enter into a definite contract with her for the school year 1931-1932 which he refused, assigning as his only reason therefor the fact that she was married.  She never again tendered her services to Stoner or demanded from him employment as a teacher.

On August 15, 1931, she entered into a definite contract with the trustee of Charleston Township and taught there during the school year 1931-1932 and under another definite contract during the school year 1932-1933.  She then taught under definite contracts with the trustee of Bethlehem Township during the school years 1933-1934 and until January 1935 when she resigned.

Arthur Beyl succeeded Raymond Stoner on January 1, 1935, and served as trustee of Silver Creek Township until December 31, 1938, during all of which time and until the summer of 1939, the appellee taught in the schools of that township under definite yearly contracts to teach.

The appellant John P. Engel succeeded Beyl on January 1, 1939, and has failed and refused to enter into a definite contract with the appellee to teach in that township for the school year 1939-1940.  It is further

stipulated that the appellee has at all times been competent to teach and has at no time been guilty of any act which would justify the cancellation of her contract and that there has been no decrease in the number of teaching positions in Silver Creek Township. No charges have ever been preferred against her and of course no hearing held.

Section 1 of the act under consideration (ch. 97, Acts of 1927), defines a permanent teacher and provides that "Upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract. Such an indefinite contract shall remain in force unless succeeded by a new contract signed by both parties or unless it shall be cancelled as provided in section 2 of this act:"

Section 2 of the act recites the only manner in which such a contract may be cancelled and provides for notice to the teacher, and a written statement of the reasons for cancellation and a hearing of the charges upon request of the teacher and it further defines the grounds for cancellation of the contract.

Section 4 of the act provides that no permanent teacher shall be permitted to cancel his indefinite contract during the school term for which his said contract is in effect nor for a period of thirty (30) days previous to the beginning of such school term unless such cancellation is mutually agreed upon and that such permanent teacher shall be permitted to cancel his indefinite contract at any other time by giving a five days' notice to the school corporation.

By the amendatory Act of 1933, ch. 116, p. 716; § 28-4307 et seq. Burns' 1933, township school corpora-

tions were omitted from the provision of the Act of 1927 but this does not affect the appellee's previously acquired status as a permanent teacher. *Indiana ex rel. Anderson* v. *Brand* (1938), 303 U. S. 95, 58 S. Ct. 443, 82 L. Ed. 685, 113 A. L. R. 1482.

By the Act of 1939, ch. 155, p. 730, it is provided that a permanent teacher ". . . shall not be discharged or have such contract cancelled except upon the grounds and in the manner provided in the act by virtue of which such teacher became a permanent teacher with an indefinite contract with such corporation."

Under the foregoing admitted facts the appellee was cn the 29th day of July 1931, a tenure teacher with all of the rights and privileges lawfully accruing to her by virtue of the Act of 1927. Her discharge and the attempted cancellation of her contract by trustee Stoner was in direct violation of law and was ineffectual to terminate her status as such, and no appropriate action has ever been taken by him or either of his successors which would effectually do so. Has she then by her own act or failure to act, terminated her status as a tenure teacher or made it impossible for her to enforce her rights as such?

It is contended by the appellant that the appellee's execution of a contract to teach elsewhere on August 15, 1931, thirteen days before the letter of cancellation was to become effective, and her employment pursuant thereto rendered performance on her part an impossibility and constituted an abandonment and cancellation of her tenure contract and amounted to the giving by her of the five day notice of cancellation "several hundred fold."

We do not agree with this contention. We do not

believe that the appellee was required, after she had been notified that she would be denied a contract, to remain idle and thus be in a position at all times to later accept an employment that had been unequivocally denied her, nor do we believe that she was under any duty to again tender her services as a teacher during the time that Stone remained in office, for her married status continued throughout that period and the reason given for the refusal of her services showed that it would be fruitless to renew her offer of performance. *House* v. *Alexander* (1886), 105 Ind. 109, 4 N. E. 891. *Lahr* v. *Broyles* (1927), 86 Ind. App. 33, 155 N. E. 709. Nor are we impressed with appellant's contention that appellee's indefinite contract was rescinded by mutual consent. The appellant cites 17 C. J. S. § 389, p. 881, which says that "Where a party, even without right, claims to rescind a contract, if the other party agrees to the rescission or does not object thereto and permits it to be rescinded, the rescission is by mutual consent. So, a contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other. However, mutual abandonment, cancellation, or rescission must be clearly expressed, and acts and conduct of the parties to be sufficient must be positive, unequivocal, and inconsistent with the existence of the contract. Conduct which is not necessarily inconsistent with continuance of the contract will not be regarded as showing an implied agreement to discharge the contract, although it may be consistent with such an agreement." We do not consider the appellee's conduct to be necessarily inconsistent with continuance of the contract.

"The right of a tenure teacher is made continuing by statute, and failure to assert that right when it is

violated does not necessarily amount to a waiver of the tenure status." *Haas* v. *Holder, Trustee, et al.* (1941), 218 Ind. 263, 274, 32 N. E. (2d) 590, 591. For the appellee to acquiesce in Stoner's unwarranted refusal to perform a continuing contract during his term of office would not necessarily be deemed an acquiescence in the destruction of the contract itself.

We now take up the question of laches or the "doctrine of stale demand." The appellant contends that appellee's conduct in teaching elsewhere for three and one-half years followed by teaching in Silver Creek Township under "non-tenure" contracts for four years, without in any way asserting or reserving to herself during that period any rights as a tenure teacher and without taking any steps to enforce her rights as such, rendered her guilty of laches or of such a "slumbering on her rights" as will bar the maintenance of this action. In 1 Pomeroy's Equity Jurisprudence, 4th Ed., § 419, p. 785, Lord Camden is quoted as saying:

> " 'A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, *and reasonable diligence.*' "

In the case of *State ex rel. Calamari* v. *Orleans Parish School Board* (1938), 189 La. 488, 179 So. 830, quoted in the case of *Haas* v. *Holder, Trustee, et al.* (1941), 218 Ind. 263, 273, 32 N. E. (2d) 590, which former was a suit for a writ of mandamus to compel the reinstatement of a teacher and for a judgment for back salary, we find the following language:

" 'Relatrix knew that, if she unreasonably delayed and gave the appearance of acquiescing in the action of the School Board, it would have to replace her with another teacher, for the public schools must remain open. This important public function cannot be made to depend upon the whim of a teacher in choosing the time she will legally assert her rights. The board and the public, therefore, would necessarily be prejudiced and placed at a disadvantage by the relatrix's conduct in procrastinating. Otherwise, either the class would have to await her wishes or a teacher would have to be employed in her place and, if one were employed, she would then have to be dismissed and the public funds dissipated by paying two persons for a single service . . . ' "

and the court quoting 21 C. J. 210 defined laches as follows:

" 'Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such delay in enforcing one's rights as works disadvantage to another.' "

The evidence discloses that the appellee did teach in Silver Creek Township from January 1, 1935 to December 31, 1938 under a succession of definite contracts to teach. As said in the case of *Lost Creek School Township, Vigo County* v. *York* (1939), 215 Ind. 636, 651, 21 N. E. (2d) 58:

"Reverting to the questions presented by this appeal, as stated in the first paragraph of this

opinion, we hold that: (1) A permanent tenure teacher's indefinite contract is a *protected contractual right entitling the teacher to a succession of definite contracts* (our italics) with terms meeting the requirements of the pertinent statutes; and (2) such indefinite contract will not sustain an action for compensatory damages, but may constitute a basis for an action in equity to compel the school corporation to recognize the teacher's status and give him the definite contract to which he may be entitled. It is not necessary to consider other questions."

It would therefore appear that from January 1, 1935 to December 31, 1938, the appellee's rights as a tenure teacher had been recognized. There would be no occasion for her to assert or take steps to enforce rights which were being accorded full recognition and she can therefore not be charged with a lack of diligence in that respect. While there is no direct evidence that the definite contracts under which she taught were issued in pursuance of her indefinite or permanent contract, they were entirely consistent therewith and with her rights as a permanent teacher.

As we view the case, there is another reason why the defense of laches or staleness of demand is unavailing in this case. It does not appear that any ▮▮▮▮ injury or damage will result to any one in the event that the relief prayed for by appellee is accorded to her. 19 Am. Jur., p. 353, § 509; 30 C. J. S., p. 531, § 116. It has been said that ". . . the Teacher Tenure Act is based upon the public policy of protecting the educational interests of the state and not upon a policy of granting special privileges to teachers as a class or as individuals." *State ex rel. Clark* v. *Stout, Trustee* (1934), 206 Ind. 58, 64, 187 N. E. 267. It does not appear however that the administration of the schools of Silver Creek Township has been so far

in any way prejudiced or that they will be in any way prejudiced by the granting of the relief prayed for.

It is lastly urged that the judgment must be reversed because "the indefinite, or tenure, contract sued on is of legislative creation and the statute creating it expressly provides that—'such an indefinite contract shall remain in force until such permanent teacher shall have reached the age of sixty-six years,'" and the appellant cites § 28-4307, Burns' 1933. To meet this contention the appellee simply asserts, without the citation of any authority except the same section of Burns' 1933, that the defense should have been set up as an issue by an affirmative answer.

But we are of the opinion that no question of the appellee's age is involved in this case. The Act of 1927 under which appellee's rights accrued, makes no mention of any age limit in connection with an indefinite contract. The Act of 1933 concerns teachers in school city and school town corporations only and does contain the age limitation, but in no way purports to attach it to township teachers whose previously acquired rights as such have been held to continue despite the enactment of the 1933 Act. *State ex rel. Anderson* v. *Brand, supra.*

Judgment affirmed.

NOTE.—Reported in 48 N. E. (2d) 463.