**BOARD OF TRUSTEES OF HAMILTON HEIGHTS SCHOOL CORPORATION,** Ronald E. McGill, Sylvia·Kay Hartley, Marcia A. House, Keith Schulenberg, and Laurence C. Beck, Individually and in their capacity as members of the Board of School Trustees of Hamilton Heights School Corporation, Appellants–Defendants,

v.

Roger V. LANDRY, Appellee–Plaintiff.

No. 06A01–8909–CV–384.

Court of Appeals of Indiana, First District.

Sept. 27, 1990.

Rodney V. Taylor, David J. Theising, Christopher & Theising, Indianapolis, Stephen A. Holt, Holt, Fleck & Free, Noblesville, for appellants-defendants.

Richard J. Darko, Mary Jane Lapointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellee-plaintiff.

David J. Emmert, Indianapolis, Indiana School Boards Ass'n, in support of Hamilton Heights School Corp., for amicus curiae.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The Board of Trustees of Hamilton Heights School Corporation (Board) and its individual members, Ronald E. McGill, Sylvia Kay Hartley, Marcia A. House, Keith Schulenberg, and Laurence C. Beck, (collectively, Board Members) appeal the trial court's grant of summary judgment in favor of Robert V. Landry (Landry) on Counts II, III, and IV of Landry's complaint and the trial court's denial of summary judgment for the Board and Board Members [1] on Counts I and V of Landry's complaint. We reverse.

## FACTS

During the 1986–87 school year Landry was a certified permanent teacher at Hamilton Heights Junior High School. On February 6, 1987, he removed the glossary from the back of 146 science textbooks owned by the school. The superintendent met with Landry on February 25, 1987, and the following day advised Landry by letter that the superintendent recommended Landry be suspended from work without pay for two days and repay the School Book Rental Fund $1.00 for each textbook damaged. After a Board hearing requested by Landry, the Board approved and ratified the disciplinary action recommended by the superintendent. On May 21 and 22, 1987, Landry was suspended from his teaching

---

1. We will refer to the Board and Board Members together as the Board unless otherwise indicated.

duties, and his paycheck was reduced by $220.00 for that period. The $146.00 damage charge also was paid.[2]

Landry filed a five count complaint against the Board and Board Members on April 28, 1988. Count I and Count V alleged federal law claims, whereas Count II alleged a violation of the Indiana Teachers' Tenure Act, Count III alleged a breach of Landry's individual Teacher's Contract, and Count IV alleged the assessment of an unlawful fine against Landry's wages. Landry filed a motion for summary judgment, and later clarified his motion to indicate he was seeking summary judgment on Counts II, III, and IV, but was not seeking summary judgment on Counts I and V. The Board and Board Members filed a motion for summary judgment against Landry on all five counts.

On August 30, 1989, the trial court entered judgment for Landry and against the Board on Counts II, III, and IV. The court granted judgment against the Board for the amount of compensation withheld from Landry, the $146.00 damage charge, and interest. On September 1, 1989, the trial court clarified its judgment with an entry denying the Board's motion. The court again granted Landry's motion on Counts II, III, and IV and awarded him $146.00 plus compensation for lost wages in the amount of $220.00 plus interest.

Because the court's entries appeared to adjudicate fewer than all of Landry's claims, the Board filed a motion on September 26, 1989, to make the September 1, 1989, entry on summary judgment motions final or, alternatively, to certify the entry for interlocutory appeal. The trial court made the September 1, 1989, entry on summary judgment motions final. The Board then filed this appeal. The parties have filed a joint statement of proceedings since no record of the hearings on summary judgment was made. Further facts will be provided as necessary to the discussion.

2. The Board alleged in its answer to Landry's complaint that Landry's union paid the assessment for the books, although Landry points out

## ISSUES

The Board and Board Members raise seven issues for our review which we restate as:

1. Whether the Board had the legal authority to suspend Landry for two days.

2. Whether the Board had the legal authority to suspend Landry without pay.

3. Whether Landry's suspension for two days without pay violated the Master Agreement between the teacher's union and the Board or Landry's individual contract.

4. Whether the Board Members are personally liable for Landry's claims.

Landry raises an additional issue:

5. Whether the denial of the Board's motion for summary judgment on Counts I and V of Landry's complaint is properly before this court.

## DISCUSSION AND DECISION

In our review of the grant or denial of summary judgment, we stand in the trial court's shoes and consider the same matters it considered. *Chambers v. Central School District School Board of Greene County* (1987), Ind.App., 514 N.E.2d 1294, 1296. As neither party contends any material issues of fact exist as to Counts II, III, or IV of Landry's complaint, we will review the trial court's grant and denial of summary judgment motions to see whether the trial court correctly applied the law. *Chambers*, 514 N.E.2d at 1296; *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184, 1186.

*Issue One*

The Board contends the trial court erred in granting Landry summary judgment and in denying the Board summary judgment on Count II of Landry's complaint. Count II alleged the Board's action in suspending Landry was a violation of the Indiana Teachers' Tenure Act and was otherwise outside the Board's authority.

this fact was not in evidence before the trial court.

The Teachers' Tenure Act, now codified at IND.CODE § 20–6.1–4–9 et seq., is based upon the public policy of protecting the educational interest of the state and its principal purpose is to secure permanency in the teaching force by creating a uniform system of permanent contracts. *See State ex rel. Tittle v. Covington Community Consolidated Schools of Fountain and Warren Counties* (1951), 229 Ind. 208, 215, 96 N.E.2d 334, 336; *Watson v. Burnett* (1939), 216 Ind. 216, 222, 23 N.E.2d 420, 423; *School City of Lafayette v. Highley* (1938), 213 Ind. 369, 376, 12 N.E.2d 927, 930 (all three cases interpreting prior versions of the Teachers' Tenure Act). The Teachers' Tenure Act was not meant to grant special privileges to teachers as a class or as individuals. *State ex rel. Clark v. Stout* (1933), 206 Ind. 58, 64, 187 N.E. 267, 269; *Engel, Trustee v. Mathley* (1943), 113 Ind.App. 458, 469, 48 N.E.2d 463, 467, *trans. denied.* Therefore, since it is legislation in which the public is interested, we must liberally construe the statutory provisions to effect the Act's general purpose. *Tittle,* 229 Ind. at 215, 96 N.E.2d at 336.

IND.CODE § 20–6.1–4–9 et seq. establishes a uniform state system for local school boards to contract with public school teachers. Mandatory procedures for termination, described as cancellation of an indefinite contract, of a semi-permanent or permanent teacher are provided in I.C. § 20–6.1–4–11.

The teacher tenure provisions do not expressly prohibit suspension of a teacher. To the contrary, IND.CODE § 20–6.1–4–11(a)(8) provides that: "Pending a decision on the cancellation of a teacher's contract, the teacher may be suspended from duty; ..." In addition, IND.CODE § 20–6.1–6–13 provides: "A school corporation may not ... suspend any employee because of affiliation with or activity in an organization unless that organization advocates ... overthrow of the United States government ... or violation of law ..." Finally, IND.CODE § 20–6.1–6–14(a) provides: "A governing body may not ... suspend ... a teacher who is a candidate for public office unless ... the teacher's activity has impaired his effectiveness in his service or has interfered with the performance of his contractual obligations. Any suspension is valid only during the period of the impairing activity."

Although I.C. § 20–6.1–4–11(a)(8) expressly authorizes a school board to suspend a teacher pending contract cancellation and I.C. § 20–6.1–6–13 and I.C. § 20–6.1–6–14 both implicitly acknowledge a board's power to suspend by prohibiting a board from exercising its power in the identified instances, nothing in the teacher tenure provisions expressly gives a board the power or authority to order a disciplinary suspension of a teacher absent the pendency of contract cancellation proceedings. Thus, while we find the Board violated no express provision of the teacher tenure act by suspending Landry for two days without pay, we must look beyond the teacher tenure provisions for the source of the Board's authority.

The power and authority of a school board in Indiana must be expressly conferred by statute or arise by necessary implication. *See Myers v. Greater Clark County School Corporation* (1984), Ind. App., 464 N.E.2d 1323, 1329. The provisions of the Indiana General School Powers Act do not expressly empower a board to order a disciplinary suspension of a teacher, but do give broad authority and flexibility to school boards. In fact, IND.CODE § 20–5–6–3 declares that the General School Powers Act:

"shall be liberally construed to permit the governing body of school corporations to conduct its affairs in a manner consistent with sound business practice to the ends that the authority of the governing body shall be clarified and that it shall be permitted to operate with the maximum efficiency consistent with accountability."

The specific powers section of the General School Powers Act provides in IND.CODE § 20–5–2–2:

"In carrying out the school purposes of each school corporation, its governing

body acting on its behalf shall have the following specific powers: ...

(2) To take charge of, manage, and conduct the educational affairs of the school corporation ...

(7) To employ, contract for, and discharge ... teachers ...

(17) To prepare, make, enforce, amend, or repeal rules, regulations, and procedures for the government and management of the schools ... and ... its ... employees ...

(19) To exercise any other power ... in carrying out the powers delineated in this section which is reasonable from a business or educational standpoint in carrying out school purposes of the school corporation ..."

In *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill.2d 389, 113 Ill.Dec. 915, 515 N.E.2d 1222, the Illinois Supreme Court held a school board had the power to suspend a tenured teacher for five days without pay because Ill.Rev.Stat.1985, ch. 122, par. 10–20.5 supplied the power by necessary implication. Paragraph 10–20.5 is very similar to I.C. § 20–5–2–2(17) and provides a local school board has the express duty "[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district." To explain its reasoning, the *Spinelli* court adopted a portion of the reasoning of the dissent in *Craddock v. Board of Education* (1979), 76 Ill.App.3d 43, 49, 29 Ill.Dec. 376, 381, 391 N.E.2d 1059, 1064 as follows:

"If the Board is to adequately manage and govern, as it is obligated to do by this Section, the rules and regulations which it adopts, for teachers and students and other personnel, must have some means of enforcement which are effective. There is implied in this obligation to make rules and regulations, and to enforce them, a power in the board to mete out discipline to those who violate the rules and regulations. Enforcement envisions effective sanctions

of some sort. If that were not the case, the power to make rules would indeed be a hollow one and effective management and government could not be accomplished. Thus, it is from this section of the school code that the power to make temporary disciplinary suspensions arises."

*Spinelli,* 118 Ill.2d at 405, 113 Ill.Dec. at 922, 515 N.E.2d at 1229.

The Pennsylvania Supreme Court, in *Rike v. Commonwealth* (1985), 508 Pa. 190, 494 A.2d 1388 found a school board, by necessary implication from certain Pennsylvania statutes, had the implied power to suspend a teacher as a form of discipline. The court relied upon Pa.Stat.Ann. tit. 24, § 2–211 (Purdon 1962), which is similar to I.C. § 20–5–2–2(19) [3], and Pa.Stat.Ann. tit. 24, § 11–1106 (Purdon 1962, Cum.Supp. 1981), which is similar to I.C. § 20–5–2–2(7) [4].

Like the Illinois and Pennsylvania courts, we find that, by necessary implication, school boards in Indiana have the power and authority to order temporary disciplinary suspensions of teachers in appropriate situations. Such power is implicit in I.C. § 20–5–2–2(2) and (19) and is necessarily implied in I.C. § 20–5–2–2(17) and (7). A school board's specific power to make and enforce rules for managing schools and school employees would be an empty power without the ability to discipline misconduct in a flexible manner. A board has the power, under I.C. § 20–5–2–2(7), to discharge teachers. A suspension is a disciplinary measure within the board's power to discharge, but is less severe than a discharge and may be used by a board when discharge would be an excessive measure in light of the teacher's misconduct.

The Certificated Educational Employee Bargaining Act, codified at IND.CODE § 20–7.5–1–1 et seq., contains strong management rights language and reinforces our above reasoning in IND.CODE § 20–7.5–1–6(b):

---

**3.** Pennsylvania school districts are imbued with "all necessary powers to enable them to carry out the provisions of this act". 24 P.S. § 2–211.

**4.** Pennsylvania school districts have the power to employ teachers. 24 P.S. § 11–1106.

"School employers shall have the responsibility and authority to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. Such responsibility and activity shall include but not be limited to the right of the school employer to: ... (4) Suspend or discharge its employees in accordance with applicable law; ..."

This provision appears to have a broad application which refers not merely to teacher tenure provisions, but to general school powers and constitutional law as well.

■ Because we hold that a school board may order a temporary disciplinary suspension of a teacher in appropriate circumstances, we must consider briefly whether Landry's activities constituted such circumstances. The Board points out that, although the textbooks were in the last year of their teaching cycle, the Board was required by IND.CODE § 20–10.1–10–3 and IND.CODE § 20–10.1–10–5 to store the texts in an unmutilated condition for at least three months after the texts last were used. In addition, the Board notes that, at the time of the incident, school policy required students who damaged texts to repay the school's book rental fund $1.00 for each destroyed page of a book. On appeal, Landry does not raise any question of material fact regarding his activities. He does not deny that he removed the glossary from the back of 146 science textbooks, nor, although he explains the purpose of his actions,[5] does he argue that such conduct did not merit discipline. Therefore, finding no material issue of fact, we hold in the circumstances of this case, the law permitted the Board to discipline Landry by suspending him for two days. The trial court erred in entering summary judgment for Landry and against the Board on Count II of Landry's complaint.

*Issue Two*

■ The Board contends the trial court erred in granting Landry summary judgment and in denying the Board summary judgment on Count IV of Landry's complaint. In Count IV, Landry did not contest the $146.00 charged him for damaging the science texts. However, the trial court entered judgment against the Board for that amount as well as for his pay for two days.

We recently addressed an analogous case where a deputy challenged a three-day suspension without pay imposed by his sheriff pursuant to IND.CODE § 36–8–10–11. In *Johnson v. Wells* (1986), Ind.App., 487 N.E.2d 466, *trans. denied,* we rejected the deputy's argument that his suspension should not be without pay because the statute did not expressly provide for a suspension without pay. Noting that "suspension with pay is a reward, not discipline", we held that the statute did not indicate the legislature intended for the deputy to receive pay during his suspension. *Id.* at 467. Similarly, we find the Board had discretion and authority to suspend Landry for two days and to not pay him for those days not worked.

Landry argues on appeal, as he did in the trial court, that the Board's action in suspending him without pay for two days contravened IND.CODE § 22–2–8–1, which prohibits employers from assessing a fine against an employee's wages. Landry notes *Black's Law Dictionary* 759 (4th ed. 1968) defines a fine as "pecuniary punishment."

We reject Landry's argument that I.C. § 22–2–8–1 applies to the withholding of his pay during his two day suspension. The withholding of his pay was not the primary punishment imposed by the Board; the suspension was the primary discipline. That is, Landry's paycheck was not reduced by two days' pay at the same time he worked those days. Instead, Landry's pay was adjusted because he did not perform any services for the school during the two day suspension.

---

5. Landry explains he removed the glossaries in order to force his students to learn the mean-

ings of words from the context, without relying on definitions listed in the glossary.

Furthermore, we find the Board had authority to require Landry, as a condition of his suspension, to make restitution for the damage committed when he destroyed the glossaries. Although the books were old, they were still being used in February 1987 when Landry removed the glossaries. Therefore, the school was damaged by Landry's action. Finally, Landry did not dispute the Board's allegation in its Answer that Landry's union paid the $146.00 and it was not withheld from his pay. Thus, he cannot rely upon I.C. § 22-2-8-1 which prohibits fines against pay. The trial court erred in granting summary judgment to Landry and in denying summary judgment to the Board on Count IV.

*Issue Three*

■ The Board contends the trial court erred in granting Landry summary judgment and in denying the Board summary judgment on Count III of Landry's complaint. Count III alleged the Board had breached its contract with Landry by withholding his pay for the two days on which he did not work because of his suspension.

■ The terms and conditions of a teacher's employment contract include all relevant statutory provisions as if they were set out in the contract. *Greater Clark County School Corp. v. Myers* (1986), Ind. App., 493 N.E.2d 1267, 1271–72; *Bernhardt v. State* (1985), Ind.App., 479 N.E.2d 1367, 1369, *trans. denied.* As we stated above, a school board has the power, implicit in Indiana statutory provisions, to order a reasonable disciplinary suspension without pay. Such provisions are to be read into the Master Agreement between Landry's union and the Board and into Landry's contract with the Board. Thus, the Board had the authority to suspend Landry without pay for his conduct.

Landry's contract for the 1986–1987 school year indicated he would receive $27,624.00 for working 180 days and rendering certain services for extra-curricular activities. Because of his two day suspension, Landry did not work the required days. Therefore, the Board appropriately withheld his pay for the two day suspension and did not breach the contract in so doing. Thus, the trial court erred in entering summary judgment for Landry and against the Board on Count III.

*Issue Four*

■ The Board Members contend the trial court erred in entering judgment against the Board Members as individuals. Regarding Count III involving the alleged breach of contract by the Board, the Board points to IND.CODE § 34-4-16.6-1 which provides that an individual public employee "is not personally liable on contracts entered into within the scope of his employment for a governmental entity." The Board members note that Landry presented no written allegation or evidence that the Board Members breached the contract in their non-official capacity as individuals. Furthermore, regarding Counts II and IV, the Board Members note that all of the acts or omissions with which Landry charges them were acts or omissions committed in their official capacity as Board Members.

As the movant for summary judgment, Landry had the burden of demonstrating the propriety of summary judgment against the individual Board Members even though they presented no evidence in response to his motion for summary judgment. *Marathon Petroleum v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778, 781–82. Landry did not allege or present evidence that the Board Members acted as individuals. Therefore, the trial court erred in granting Landry's motion for summary judgment against the Board Members and in denying the Board Members' motion for summary judgment on Counts II, III, and IV.

*Issue Five*

■ Landry contends the question of whether the denial of the Board's motion for summary judgment on Counts I and V was error is not properly before this court. Landry did not move for summary judgment on Counts I and V, which both involve federal law, and he explained to the trial court that if summary judgment were to be granted on his state law claims, Counts II, III, and IV, Landry would consider a complete remedy to have been entered. Accordingly, the trial court did not grant or deny summary judgment for Landry on Counts I and V, although it denied

the Board's motion for summary judgment on those counts.

The denial of a motion for summary judgment is an interlocutory order and not a final judgment. It is therefore subject to the provisions of Ind. Appellate Rule 4(B)(6) which requires an appellant, after obtaining a trial court's certification of the case for interlocutory appeal, to petition the Court of Appeals to grant leave to appeal the interlocutory order. The denial of a motion for summary judgment is not appealable until the Court of Appeals grants leave to appeal. *Scott v. Bodor, Inc.* (1990), Ind.App., 550 N.E.2d 1326, 1327.

Here, the trial court issued an entry making the September 1, 1989, entry on summary judgment motions final. However, the court did not certify that any of the conditions of App.R. 4(B)(6) were applicable. Furthermore, the Board did not petition the Court of Appeals to request that an interlocutory order be found appealable, and we have not granted leave to take an interlocutory appeal of the denial of the Board's motion for summary judgment on Counts I and V. In addition, no final judgment was entered on Counts I and V. Therefore, those issues remain before the trial court and are not before us.[6]

We reverse the trial court's entry of summary judgment for Landry and against the Board and the Board Members on Counts II, III, and IV and remand to the trial court to enter summary judgment in favor of the Board on those counts. Landry's action against the Board Members as individuals was improper and summary judgment should be entered on behalf of the Board Members on Counts II, III, and IV also. Counts I and V are not before us and remain before the trial court.

Reversed and remanded.

MILLER, P.J., and BAKER, J., concur.

---

[6] The Board has cited several cases in support of its argument that Landry's federal law claims should not be decided by the trial court because Landry's claims are susceptible to state law remedies. We do not address these arguments since Counts I and V are not properly before us.