**GATLIN PLUMBING & HEATING, INC., Appellant–Plaintiff,**

v.

**ESTATE OF Robert YEAGER, Appellee–Defendant.**

No. 45A03–0907–CV–318.

Court of Appeals of Indiana.

Feb. 8, 2010.

Benjamen W. Murphy, Murphy Yoder Law Firm, P.C., Merrillville, IN, Richard Anderson, Anderson & Anderson, Merrillville, IN, Attorneys for Appellant.

Edward P. Grimmer, Joseph C. Svetanoff, Austgen Kuiper & Associates, P.C., Crown Point, IN, Attorneys for Appellee.

---

1. Musetta was the daughter of Ivan and Marjorie Gatlin.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Gatlin Plumbing & Heating, Inc. ("Gatlin") appeals the denial of its objection to the trial court's order in the Matter of the Estate of Robert H. Yeager ("the Estate") that directed the transfer of 63 shares of Gatlin capital stock held by the late Robert H. Yeager ("Robert").

We affirm.

*ISSUES*

1.  Whether the trial court erred when it held that Gatlin's objection was barred by Indiana Code section 29–1–14–1.

2.  Whether the trial court erred when it held that Gatlin's objection based on the Shareholders' Agreement was not timely.

3.  Whether the trial court erred when it did not vacate its transfer order.

*FACTS*

In 1951, Robert married Musetta Gatlin ("Musetta"). On June 27, 1957, Gatlin was formed. On December 16, 1975, a Shareholders' Agreement was signed for Gatlin, noting the growth of Gatlin and naming its current shareholders as Ivan Gatlin, Chief Operating Executive, with 1080 shares; Marjorie Gatlin, with 491 shares; and 10 shares each held by Iris Tamminga, Doris Cox, Musetta,[1] John Gatlin, Darl Gatlin, and Roger Gatlin. (App.84). The Shareholders' Agreement initially recited that its purpose was to provide for "the possibility of death of the parties," and for the "continued profitable operation of the business in the event of Ivan Gatlin's or Marjorie Gatlin's death." (App.84, 85). Stating that "open market ... sale without restriction" of shares was "not advisable," it sought to "restrict [ ] the privilege of own-

ing shares." (App.85 [2]). Article V, entitled "Death of a Shareholder," then specified as follows:

> In the event of the death of any person who is not a descendant of Ivan Gatlin and Marjorie Gatlin and who is holding shares of stock of this CORPORATION, in their own name individually or as a surviving joint tenant, the CORPORATION shall have the option, within sixty (60) days after such decease, or within thirty (30) days after the appointment and qualification of an executor or administrator of the estate of such decedent, to purchase any or all of the shares of stock of such decedent, at a price as provided in ARTICLE II, Paragraph 5, hereof, and upon a tender of the amount of such purchase price to the heirs or legal representatives of such decedent, the heirs or legal representatives shall thereupon surrender to the CORPORATION the certificates evidencing ownership of such shares of stock.

(App.89).

On May 15, 1979, an amendment to the Shareholders' Agreement noted that Gatlin had "additional shareholders who [were] not signators" to the December 1975 agreement, and "the wish and desire of all existing shareholders of the corporation that all current and future shareholders be bound by that Agreement." (App.52). Accordingly, the "undersigned, being all of the current shareholders of the corporation, . . . agree[d] to be bound by all the terms of" the December 1975 Shareholders Agreement. *Id.* Both Robert and Musetta signed the May 1979 amendment as shareholders.[3]

On October 25, 2006, Robert died. On July 11, 2007, an Indiana inheritance tax return was filed.

On June 4, 2008, his widow, Musetta, and her co-successor trustee of the Yeager Joint Trust filed an affidavit of entitlement pursuant to Indiana Code section 29–1–8–4.5.[4] The affidavit stated that Robert had died testate but the will (provided therewith) was not probated as the estate was of minimal value; and seeking an order, pursuant to the terms of Robert's will and the Yeager Joint Trust, directing Gatlin to transfer Robert's 63 shares of Gatlin capital stock—32 shares to Musetta and Belinda Hamacher, as successor co-trustees of the Joint Trust; and 31 shares to Musetta as trustee of the Musetta Yeager Trust. Also on June 4, 2004, Musetta and her co-successor trustee filed an affidavit for transfer of personal property. That same day, June 4, 2004, the trial court issued its order on affidavit of entitlement, holding that "the affiants" were "entitled to the

---

2.  We note that our review of the record was impeded by the form of its compilation. The Table of Contents reflects material from pages 1 through 137. However, the contents that follow are pages 1 through 37; then 65 through 100; 63 and 64; 38 through 62; and, finally, 101 through 137.

3.  According to Musetta's affidavit of October 24, 2008, she "worked in the family business which is Gatlin Plumbing & Heating, Inc. for fifty-two (52) years." (App.81).

4.  Chapter 8 of the probate code provides a mechanism for dispensing with administration in an estate of minimal gross probate value. Section 4.5 thereof provides that where there is no administration of such an estate,

> [t]he person claiming to be entitled to payment or delivery of the property belonging to the decedent may present to the court having jurisdiction over the decedent's estate an affidavit containing a statement of the conditions required under section (1)(b) [I.C. § 29–18(1)(b)] of this chapter. Upon receipt of the affidavit, the court may, without notice and hearing, enter an order that the claimant is entitled to payment or delivery of the property.

I.C. § 29–1–8–4.5.

transfer" of the 63 shares of Gatlin stock in Robert's name. (App.18).

On June 19, 2008, Gatlin filed its objection to the order, stating that it was "an interested party" because "it h[e]ld a valid right to purchase the Gatlin" stock ordered to be transferred. (App.21). Gatlin cited Article V as giving it "the right to purchase stock from a deceased shareholder within 30 days after the appointment and qualification of an executor or administrator." *Id.* Gatlin asserted that there had been "no executor or administrator appointed in this estate due to the amount of assets being under $50,000.00"; and that "due to the lack of an executor or administrator," the "30-day period for the corporation to exercise its right should run from the date of the Order transferring the stock, as that was the first instance that a right existed in order to transfer said stock." (App.21, 22).

Subsequently, Gatlin submitted its memorandum of law in support of its objection to the order to transfer, and its designation of undisputed material facts. Gatlin repeatedly argued its "right to repurchase stock from a deceased stockholder within thirty (30) days after the appointment and qualification of an executor or administrator of the estate of a deceased shareholder." (App.55, 57, 59). It argued that because there was no executor or administrator of the estate appointed, the "first" opportunity for transfer of stock pursuant to the Shareholders' Agreement provision was either upon the filing of the affidavit of entitlement or the trial court's order of June 4, 2008. (App.55, 59). Its arguments made *no* reference to the option provided in the Shareholders' Agreement whereby Gatlin could "within sixty (60) days after" Robert's death, exercise the option of purchasing his share of stock by tendering the price as specified. (App.89). Nor did

Gatlin designate any evidence or make any argument that it was unaware of Robert's death on October 25, 2006.

The Estate's brief in response noted that Gatlin had the option of acting within sixty days of Robert's death to purchase his stock, and that it had failed to exercise this option. An affidavit by Musetta recited her November 2007 conversations with Gatlin shareholders indicating that Gatlin would not pursue purchase of the stock; and chronicled her fruitless correspondence, after employing counsel, from June of 2007 through March of 2008 asking Gatlin to transfer Robert's stock before filing the affidavit of entitlement on June 4, 2008.

On June 19, 2009, the trial court issued its order. It found that Gatlin had neither exercised its option within sixty days of Robert's death, as provided in the Shareholders' Agreement, nor "open[ed] an estate" itself—which it could have done pursuant to the Probate Code as an "interested party." (App.132). Concluding that Gatlin had failed to exercise its legal rights in a timely manner, the trial court denied its objection to the order that Gatlin transfer the stock held in Robert's name.

### DECISION

#### 1. *Indiana Code section 29–1–14–1*

■ Gatlin first argues that the trial court erred as a matter of law when it held that its objection, seeking to exercise its option to purchase Robert's share, was time-barred pursuant to Indiana Code section 29–1–14–1. As it correctly notes, appellate review of the trial court's interpretation of a statute is *de novo. See, e.g., Gibson v. Hernandez,* 764 N.E.2d 253, 255 (Ind.Ct.App.2002).

Indiana Code section 29–1–14–1 expressly provides limitations on filing "claims

against a decedent's estate." We have frequently held, however, that "a claim," as the term is used in that particular statutory provision, refers to a debt or demand of a pecuniary nature which could have been enforced against the decedent *in his lifetime* and could have been reduced to a simple money judgment. *Cardwell v. Estate of Kirkendall,* 712 N.E.2d 1047, 1049 (Ind.Ct.App.1999) (citing *Matter of Williams' Estate,* 398 N.E.2d 1368, 1370 (Ind.Ct.App.1980); *Ostheimer v. McNutt,* 116 Ind.App. 649, 652, 66 N.E.2d 142 (1946); *Tinkham v. Tinkham,* 112 Ind. App. 532, 538, 45 N.E.2d 357 (1942)). The option given to Gatlin by the Shareholders' Agreement to purchase Robert's stock was not a debt or demand of a pecuniary nature which Gatlin could have enforced against him in his lifetime. Hence, Gatlin's objection was not time-barred pursuant to Indiana Code section 29–1–14–1.

■ We do not read the trial court's conclusion that Gatlin's objection was untimely, however, to be solely grounded on that statutory provision. The Probate Code defines "interested persons" as

> heirs, devisees, spouses, creditors, or any other having a property right in or claim against the estate of a decedent being administered. This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved.

I.C. § 29–1–1–3. The Code further provides that after the death of a testator,

> [a] verified written application may be filed by or on behalf of any interested person ..., in any court having jurisdiction of the administration of the decedent's estate for an order of that court against any person who is alleged to have the custody of the will of said person so dying, to produce said will

before said court ... in order that said will may be probated.

I.C. § 29–1–7–3. More specifically, "[a]ny interested person ... may petition the court ... to have the will of such decedent ... probated," and to have letters testamentary issued to the named executor *or* an administrator appointed. I.C. § 29–1–7–4. Thus, as the trial court correctly noted, Gatlin could have opened an estate as an "interested party," but failed to do so. (App.132).

*2. Shareholders' Agreement*

■ Gatlin also argues that the trial court erred when it did not find that Gatlin's objection was a valid exercise of its option to purchase in accordance with the Shareholders' Agreement. Provisions of a shareholder agreement that restrict the transfer of stock "are treated as contracts either between shareholders or between shareholders and the corporation." *F.B.I. Farms, Inc. v. Moore,* 798 N.E.2d 440, 445 (Ind.2003). The interpretation of a contract is a question of law and is reviewed *de novo. Dunn v. Meridian Mut. Ins. Co.,* 836 N.E.2d 249, 251 (Ind.2005). If the terms of the contract are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Id.* "Restrictions on transfer are to be read, like any other contract, to further the manifest intention of the parties." *F.B.I.,* 798 N.E.2d at 445–46. "Because they are restrictions on alienation and therefore disfavored, the terms in the restrictions are not to be expanded beyond their plain and ordinary meaning." *Id.* at 446.

Gatlin reminds us that the Shareholders' Agreement contained "two time periods for Gatlin to exercise its option to buy back" stock from a deceased shareholder. Gatlin's Br. at 13. According to Gatlin, these two time periods are (1) the sixty-days-after death period, and (2) the period within thirty days of the appointment and

qualification of an executor or administrator of an estate. Gatlin argues that the Agreement's use of "the word 'or' between the two time periods, indica[tes] the various parts of the sentence it connects are to be taken separately." *Id.* at 13–14 (citing 26 I.L.E. *Statutes* § 77 (2004)). Gatlin appears to posit that the Shareholders' Agreement clearly endowed it *two separate* opportunities to exercise its option to buy back its stock; and, therefore, failure to exercise one opportunity must necessarily leave it with the second opportunity to act. We cannot agree.

The I.L.E. provision cited by Gatlin specifically states that

> [t]he words "and" and "or," as used in statutes are not interchangeable, being strictly of a conjunctive and disjunctive nature respectively, and their ordinary meaning should be followed if it does not render the sense of the statute dubious.

26 I.L.E. *Statutes* § 77 (2004). According to the dictionary, the word "or" is "used as a function word to indicate (1) an alternative between different or unlike things, states, or actions ...; (2) choice between alternative things, states or actions...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1585 (4th ed.1976). In other words, the Shareholders' Agreement provided Gatlin with two alternatives. We find that acceptance of Gatlin's argument would replace this common and ordinary meaning of the word "or" with the meaning for the word "and"—"along with or together with, ... added to," *id.* at 80; and would impermissibly make the two words "interchangeable." I.L.E. at *Statutes* § 77. Therefore, Gatlin's argument that the trial court erred when it failed to find that the Shareholders' Agreement permitted it to exercise its second option to purchase the stock after the trial court's issuance of its June 4, 2008 order must fail.

### 3. *Statutory Compliance*

■ Gatlin next argues that the trial court erred when it denied its objection to the order of transfer because averments within the Estate's affidavit of entitlement as to the minimal value of the estate [5] were not sustained by the evidence. The trial court found Gatlin's argument on "the issue regarding the Affidavit of Entitlement" had "become moot," given its conclusion that Gatlin had failed to exercise its legal rights in a timely manner. (App. 133).

■ We note, as quoted above, that when Gatlin filed its objection to the trial court's transfer order, it expressly asserted that "the amount of" the Estate's assets was "under $50,000.00." (App.21). Judicial estoppel prevents a party from asserting a position in a legal proceeding that is inconsistent with one previously asserted, and it "precludes a party from repudiating assertions in the party's own pleadings." *PSI Energy, Inc. v. Roberts,* 829 N.E.2d 943, 957 (Ind.2005), *on reh'g* 834 N.E.2d 665.

We find no common law pertaining to Chapter 8 of the Probate Code as to dispensing with administration for estates with minimal gross probate value, or the specific provision for an affidavit of entitlement. Nevertheless, as indicated above, there has never been an allegation by Gatlin that it was unaware of Robert's death. According to Musetta's affidavit, within days of Robert's October 25, 2006, death and before his funeral, "donations made in memory of Robert" were received by his church from Roger Gatlin, president of Gatlin, and from the Gatlin corporation. (App.81). Further, within the year follow-

---

5. Specifically, the statute provides that administration may be dispensed with when the value of the gross probate estate does not exceed $50,000.00. I.C. § 29–1–8–1(b)(1).

ing Robert's death, Gatlin shareholders advised Musetta that Gatlin would not seek to purchase the stock in Robert's name, *and* beginning in June of 2007, Musetta, after hiring counsel, directed written inquiries to Gatlin requesting transfer of the stock. Yet, as of June 4, 2008, when the affidavits were filed in the Estate, no action had been taken by Gatlin to open an estate for the purpose of asserting an interest in Robert's stock.

Indiana Code section 29–1–8–4.5 provides that upon receipt of an affidavit of entitlement containing certain averments, the trial court "may, without notice and hearing, enter an order that the claimant is entitled to payment or delivery of the property" sought by the affidavit. In the face of Gatlin's objection to the court's order thereon, we find that the trial court's equity jurisdiction would apply. The trial court's equity jurisdiction, however, is evoked by a showing of "conscience, constant good faith, and reasonable diligence," to aid the party which has not "slept on its rights." *See Engel v. Mathley*, 113 Ind. App. 458, 48 N.E.2d 463, 466 (1943) (quoting 1 POMEROY'S EQUITY JURISPRUDENCE § 419, p. 785 (4th ed.)). This principle is expressed in the maxim, "equity aids the vigilant, not those who slumber on their rights." 12 I.L.E. *Equity* § 23 (2009). Here, the trial court found that Gatlin had

failed to act "in a timely manner" to exercise its option to repurchase stock. App. 132. The evidence supports that finding, and the finding supports the trial court's conclusion. Therefore, we find no error here.

Affirmed.

KIRSCH, J., concurs.

MAY, J., dissents with separate opinion.

MAY, Judge, dissenting.

The decision by Yeager's heirs not to open an estate, even though the decedent's assets exceeded the $50,000 limit,[6] should not permit them to circumvent the shareholder's agreement to which Yeager was a party. I must therefore respectfully dissent.

Our courts have long recognized and respected the freedom to contract. *Ransburg v. Richards*, 770 N.E.2d 393, 395 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 700 (Ind.2002). There is a strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties. *Id.* As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting, and their contracts, when

---

**6.** It appears undisputed that the value of the Gatlin stock alone exceeded $50,000, so the trial court should not have permitted the administration of the estate to be avoided pursuant to Ind.Code § 29–1–8–4.5 based on Musetta's apparent misrepresentation in the affidavit of entitlement that the value of the entire estate was less than $50,000. Ind. Code § 29–1–8–4 provides:

> representatives, a personal representative or a person acting on behalf of the distributees may close an estate administered under the summary procedures of section 3 of this chapter by filing with the court, at any time after disbursement and distribution of the estate, a verified statement stating that:

> (1) to the best knowledge of the personal representative or person acting on behalf of the distributees the value of the gross probate estate, less liens and encumbrances, did not exceed the sum of:
> (A) fifty thousand dollars ($50,000)....

Musetta does not acknowledge in her brief the value of the stock or that, because of the value of the stock, Yeager's gross estate apparently exceeded $50,000. She does say the value of the estate does not exceed $50,000 "less liens, encumbrances, administration expenses and attorney fees," (App. at 14), but states on the next page there are no known creditors. Nor does Musetta assert there were any liens or encumbrances.

entered into freely and voluntarily, are enforced by the courts. *Id.*

The majority does not question the validity of the shareholders' agreement, yet in effect renders it unenforceable by disregarding Gatlin's right to purchase Yeager's stock within thirty days after the appointment and qualification of an executor or administrator. Musetta asserted in her Affidavit for Transfer of Personal Property that Yeager's will "was not probated as the estate was of minimal value, *wherein the opening of an estate and probating of the will was not required.*" (App. at 14) (emphasis supplied). She alleged the value of Yeager's gross estate "does not exceed the sum of Fifty Thousand Dollars ($50,000.00) as provided by I.C. 29–1–8–1," (*id.*), but then stated in the next paragraph his Gatlin stock was worth $63,567.

As an estate need not be opened within sixty days after the death of a decedent, it is apparent the shareholder agreement was crafted to permit Gatlin to purchase a decedent's stock even if an estate is not opened promptly. The agreement explicitly provides Gatlin may purchase the stock within thirty days after the appointment of an executor or administrator. In other words, heirs may not defeat the shareholder agreement by delaying the opening of the estate for sixty days or more.

But that appears to be exactly what the majority result would permit. Yeager died October 25, 2006, and Musetta never opened an estate, nor did she file until June of 2008 her Affidavit of Entitlement alleging the opening of an estate was not required because of its minimal value. Her delay and apparent misrepresentation of the value of the estate [7] should not permit her to avoid the shareholder agreement's provisions that define when Gatlin may purchase Yeager's stock.

As there has not yet been an "appointment and qualification of an executor or administrator of the estate," (*id.* at 89), I would hold Gatlin's thirty-day period to exercise its option has not run. At the very least, I would treat Musetta's affidavit as the functional equivalent of an "appointment and qualification of an executor or administrator of the estate," especially where, as here, it appears an estate should have been opened but was not because of Musetta's apparent misrepresentation of its value.

I must accordingly respectfully dissent.

---

**7.** As noted above, Musetta stated in her own affidavit that the estate was worth less than $50,000 even though the Gatlin stock, which she describes as Yeager's personal property, was worth over $63,000. Still, the majority declines to consider Gatlin's argument the estate was worth more than $50,000 and therefore administration should not have been dispensed with pursuant to Ind.Code § 29–1–8–1. It holds Gatlin is estopped from challenging the value of the estate because it "expressly asserted that 'the amount of the Estate's assets was 'under $50,000.' '" Op. at 24.

The statement on which the majority apparently relies is from Gatlin's objection to the Order on Affidavit of Entitlement. There Gatlin said "there was no executor or administrator appointed in this estate due to the amount of assets at issue being under $50,000.00." (App. at 21.) I believe this statement is merely Gatlin's explanation why there was no executor or administrator; I would not read the statement as Gatlin's "express assertion" that it knew what the value of Yeager's estate was and agreed it was "minimal" for purposes of Ind.Code § 29–1–8–1.