# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Sustatia v. Shannon*, 2012 IL App (2d) 101230

---

| | |
|---|---|
| Appellate Court Caption | ELIZABETH SUSTATIA, Plaintiff-Appellant, v. CATHERINE M. SHANNON, Director of the Department of Labor, THE DEPARTMENT OF LABOR, and WEST SUBURBAN BANCORP, INC., Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-1230 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | December 30, 2011<br><br>February 15, 2012<br>February 15, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Department of Labor's denial of plaintiff's complaint alleging that her former employer improperly denied her request for unpaid leave to address a domestic violence issue pursuant to the Victim's Economic Security and Safety Act was affirmed where the finding that plaintiff was not credible was not against the manifest weight of the evidence and the finding that plaintiff was not on valid leave for purposes of the Act was not clearly erroneous. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-MR-307; the Hon. Michael J. Colwell, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Charles Drake Boutwell, of Northbrook, for appellant. |
| | Michael Resis and Allison L. Chaplick, both of SmithAmundsen LLC, of Chicago, and Jeffrey A. Risch, of SmithAmundsen LLC, of St. Charles, for appellee West Suburban Bancorp, Inc. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for other appellees. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Bowman and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, Elizabeth Sustatia, filed a complaint with defendant the Department of Labor (Department), alleging that her former employer, defendant West Suburban Bancorp, Inc. (bank), improperly denied her request for unpaid leave to address a domestic violence issue under the Victim's Economic Security and Safety Act (the Act) (820 ILCS 180/1 *et seq.* (West 2008)). Defendant Catherine M. Shannon, the Department's Director (Director), adopted and upheld the administrative law judge's (ALJ's) findings and recommendations and denied plaintiff's complaint. On administrative review, the trial court affirmed the Department's order. Plaintiff appeals, challenging the Department's findings that she did not: (1) take valid leave under the Act; and (2) provide sufficient corroborating documents. For the following reasons, we affirm.

¶ 2                                          I. BACKGROUND

¶ 3        From October 2002 to August 16, 2006, plaintiff worked for the bank as a personal banker. On April 28, 2006, plaintiff informed the bank that she would miss work on May 8, 2006, to attend court in the criminal prosecution of Torance Henderson, her boyfriend, for domestic battery.

¶ 4        The domestic battery charges arose from a December 6, 2005, incident with Henderson, with whom plaintiff had lived since September 2002. Henderson attacked plaintiff in their

Aurora residence by sitting on top of her and trying to strangle her. T.H. (age nine at the time), plaintiff and Henderson's son, witnessed the attack. Plaintiff sought treatment that day at Dreyer Medical Center with Drs. Richard Kelly and Ashok Jagasia; she was also subsequently treated by Elaine Brodermus, a licensed clinical social worker. The following day, December 7, 2005, plaintiff reported the attack to the Aurora police department, and on December 22, 2005, the State filed a complaint against Henderson, charging him with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2004)).[1] Prior to the attack, on October 26, 2005, Henderson had filed an emergency petition for custody of T.H. Plaintiff testified that, some time after the domestic battery complaint was filed, plaintiff and Henderson agreed that Henderson would drop the pending custody petition if plaintiff would drop or not proceed with the domestic battery case. On December 13, 2005, plaintiff and T.H. moved out of the Aurora home. On February 6, 2006, Henderson withdrew his custody petition. The hearing on the domestic battery case was set for May 8, 2006.

¶ 5    On April 28, 2006, plaintiff informed her supervisor, Dawn Oles, and a member of the bank's human resources department, Kelly Pilch, of the May 8 court proceeding. Pilch informed plaintiff that, to qualify for leave under the Act, she would have to provide a letter from her attorney or other suitable court documents stating that the court date was related to the December 6, 2005, domestic violence incident and corroborating her appearance. Pilch subsequently, on May 2, requested that plaintiff provide corroborating evidence and a sworn statement; Pilch later, on May 15, provided a form to be used as the sworn statement; plaintiff submitted the statement on May 23.

¶ 6    Plaintiff contacted Robert Labak, a licensed clinical social worker who was treating T.H. and subsequently, on May 4, 2006, began treating plaintiff, requesting a letter excusing her from work for the court hearing. Labak prepared a letter (Labak letter No. 1), dated May 2, 2006, requesting that plaintiff be excused to attend the court hearing, which was "essential to expedite the resolution of several key issues impacting the psychological well-being of her son for whom I continue to provide outpatient treatment." Plaintiff provided the letter to the bank's vice president of human resources, Mary Ellen Condon, who responded that the letter was *insufficient* to satisfy the Act. Condon instructed plaintiff that she could provide a letter from either her attorney or the court.

¶ 7    On May 5, 2006, three days before the hearing, plaintiff requested that Labak provide a revised letter including requests for additional days off of work. Labak drafted a second letter (Labak letter No. 2), dated May 5, 2006, requesting that plaintiff, whom he referred to as his patient, be excused from work on May 8 "to appear at a scheduled court date" related to "an incident of domestic violence that occurred in December of 2005" and that plaintiff also be excused on May 10 and 11. A May 15, 2006, letter from Pilch to plaintiff acknowledged receipt of Labak letter No. 2 (on May 11, 2006) and noted that the bank *accepted* it as proper certification of the May 8 court date. Pilch also requested that plaintiff sign a sworn statement (a draft of which was included with the letter).

---

[1]As to T.H., a subsequent Department of Children and Family Services investigation resulted in an "unfounded" report of alleged child abuse or neglect.

¶ 8    Plaintiff testified that, on May 8, 2006, she arrived at the courthouse at 8:40 or 8:45 a.m. At court, plaintiff knew only Henderson. They discussed their agreement: that plaintiff would not pursue the criminal case because Henderson had dropped the custody case. Plaintiff stated that she spoke with Assistant State's Attorney Mike Fisher about dropping the case: "I asked what it was that I needed to do to make sure that there wouldn't be any charges against [Henderson] and if I could drop the case." According to plaintiff, Fisher stated that only the State could drop the case. She related this information to Henderson, who sat next to her in the courtroom, and Henderson suggested that plaintiff not respond when her name was called as a witness. Plaintiff further testified that she waited outside the courtroom in the afternoon when the case was called. The court entered a *nolle prosequi* order, noting in its written order that it was granting the State's *nolle prosequi* motion due to plaintiff's failure to appear as a witness and the State's inability to proceed without her testimony. Plaintiff and Henderson left the courthouse at 1:30 p.m. Plaintiff testified that, later that day, she attended an appointment with Labak.

¶ 9    On May 23, 2006, plaintiff signed a form that was drafted by Condon, swearing that her May 8 absence from work was related to her participation in court proceedings pertaining to an act of sexual or domestic violence and that she was seeking medical attention or counseling as a result. Plaintiff was absent from work on June 21, 2006. In a letter dated the same day to Labak (and copying plaintiff), Condon requested clarification as to how Labak was able to corroborate plaintiff's May 8 court appearance. On either July 7 (per Condon) or July 10 (per plaintiff), plaintiff informed Condon that Labak was not present in court on May 8.

¶ 10    On July 17, 2006, Condon, via a letter, informed plaintiff that, as a result of her failure to provide acceptable corroborating evidence, the bank was *reversing* its position that plaintiff was entitled to leave under the Act on May 8, 2006, and that it would instead code that date as a paid vacation day. (However, plaintiff continued to pursue the matter as leave under the Act.) Condon also noted that she had not received any response from Labak to her request for clarification and noted that plaintiff herself had informed Condon that Labak was not present at court on May 8, so he could not corroborate plaintiff's presence. She again requested corroborating evidence.

¶ 11    In a letter dated June 27, 2006 (Labak letter No. 3), Labak responded to Condon's June 21 letter, but plaintiff refused to permit Labak to release the letter to the bank. In that letter, which plaintiff subsequently attached to her complaint, Labak stated that he could authenticate plaintiff's attendance at the court date because he saw her as a patient "later that evening for a documented appointment wherein she spoke credibly of the specifics of the emotional experience." Plaintiff testified that she did not turn in the letter to the bank because it did not refer to any court record or document that Labak reviewed and he was not in court. "He could not corroborate that I was there."

¶ 12    On August 9, 2006, via letter, Condon again requested from plaintiff corroborating evidence of the court date and noted that she had not received a response from Labak. Condon requested that plaintiff report to Condon's office on August 14, 2006, at 9 a.m. with corroborating evidence.

¶ 13    Plaintiff did not report to work or Condon's office on August 14, 2006. On August 15, 2006, plaintiff was suspended for insubordination and misconduct for failure to provide appropriate validation of her court appearance. On August 16, 2006, the bank terminated plaintiff's employment due to insubordination and misconduct for failure to follow management's directions to provide written corroboration to validate the court appearance.

¶ 14    On August 15, 2006, prior to her termination, plaintiff filed a complaint with the Department, alleging a violation of the Act. Specifically, she argued that the bank denied her statutory rights by retroactively reversing leave approval and by harassing her. On September 22, 2006, the Department found reasonable cause for plaintiff's claim that the statute had been violated. On May 1, 2007, plaintiff filed an amended complaint with the Department, arguing that she was discharged as a result of taking leave under the Act and/or in retaliation for such leave. She also alleged that the bank harassed her, discriminated against her, and denied her rights under the statute, in that the bank: repeatedly requested information that plaintiff did not have; retroactively withdrew its approval and then suspended her for taking leave on May 8; discharged her for taking leave on that date; and retaliated against her by discharging her.

¶ 15    Hearings were held in June and July 2007. On August 1, 2008, the ALJ issued his final recommendations to the Director in which he recommended that there be a finding of no violation of the Act and that plaintiff's complaint be denied. The ALJ found that both plaintiff and T.H. were victims under the Act and that plaintiff met the statute's notice requirements. However, the ALJ further found that: (1) based in part on his negative assessment of plaintiff's credibility, plaintiff was not on valid leave under the Act; (2) plaintiff did not provide corroborating evidence under the Act; and (3) although the bank committed improper actions (specifically, its construction of "corroborating evidence" was unreasonable), they did not constitute violations of the statute because the bank did require corroborating evidence (showing that she prepared for, attended, or participated in the domestic battery proceeding) and plaintiff did not provide it. The ALJ also found that, because plaintiff did not prevail on her claim under the Act, the damages and attorney fees issues were moot.

¶ 16    The ALJ's specific findings concerning plaintiff's credibility were as follows. The ALJ noted that, at the conclusion of the liability portion of the hearing, he initially found plaintiff "generally and overall credible[;] however, in some areas, only by the slimmest margins." As to the attack, the ALJ found plaintiff credible because there was other credible evidence, namely, T.H.'s testimony, to support her testimony. As to whether plaintiff prepared for, attended, or participated in the domestic battery proceeding, the ALJ first found that plaintiff was not a witness (as supported by plaintiff's testimony and the *nolle prosequi* order) and that she did not attend the proceeding (as supported by plaintiff's testimony). As to whether plaintiff prepared for or participated in the proceeding, the ALJ found that plaintiff was not credible. The ALJ's somewhat positive assessment of plaintiff's credibility during the liability portion of the hearing "shifted substantially against her" during the damages portion. The ALJ noted that, during the liability portion, plaintiff made inconsistent statements concerning her reporting of medical conditions, such as bruising to her arms, and the year she obtained a copy of the domestic battery case file (confusing 2006 and 2007). The ALJ

further found that, during the damages portion, plaintiff made oral changes to a previously submitted affidavit concerning places of employment and the year she took real estate courses (confusing 2003 and 2007). The ALJ found that (during both portions of the hearing) plaintiff's demeanor during her principal testimony was substantially different depending on the topic. The ALJ found plaintiff nervous and (authentically) imprecise or vague during her principal testimony, but "unnaturally precise" concerning the May 8, 2006, courthouse events. Plaintiff "knew, without hesitation, the name of the assigned [a]ssistant State's Attorney[;] she knew within a few minutes when court was in session and when it was not. This testimony did not compare favorably with [plaintiff's] general inability to remember correctly a specific year." Finally, the ALJ found that plaintiff's demeanor substantially weighed "against Labak Letter 3."

¶ 17    On May 5, 2009, the Director issued her final decision and order, adopting and upholding the ALJ's recommendations and denying plaintiff's complaint. Plaintiff sought administrative review in the circuit court and, on October 4, 2010, the court affirmed the Director's decision. Plaintiff appeals.

¶ 18                                    II. ANALYSIS

¶ 19    Plaintiff challenges the Director's findings that she: (1) was not on valid leave under the Act; and (2) did not provide sufficient corroborating documents. For the following reasons, we reject plaintiff's first argument and need not address her second claim.

¶ 20                        A. Plaintiff's Statement of Facts

¶ 21    Preliminarily, we note that plaintiff's statement of facts is argumentative. Illinois Supreme Court Rule 341(h)(6) (eff. Mar. 16, 2007) requires in part that a party's statement of facts contain "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." Although our review of plaintiff's statement of facts reveals that it does not comply with Rule 341(h)(6), plaintiff's violations of the rule do not hinder our review of the case. We have disregarded arguments in plaintiff's statement of facts and caution plaintiff's counsel to avoid such violations in future appeals.

¶ 22                            B. Standards of Review

¶ 23    Judicial review of a Department decision concerning the Act is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)). 820 ILCS 180/35(a) (West 2010).[2] In a proceeding for administrative review, we review the decision of the administrative agency, rather than that of the circuit court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007).

¶ 24    In an administrative review case, the standard of review depends on what is in dispute:

_____

[2]The office of the Attorney General may intervene, as it has done here, on the Department's behalf in cases of general public importance, if the Department so certifies. 820 ILCS 180/35(a)(3) (West 2010).

the facts, the law, or a mixed question of fact and law. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (*per curiam*). Where the historical facts are admitted or established, the controlling rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law, for which the standard of review is "clearly erroneous" (*AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391-94 (2001)); we will reverse the agency's decision only if we are " 'left with the definite and firm conviction that a mistake has been committed' " (*id.* at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948))). However, where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question, for which our review is *de novo*. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423 (2010). Further, we review *de novo* questions of statutory construction. *Young-Gibson v. Board of Education of the City of Chicago*, 2011 IL App (1st) 103804, ¶ 39. We reverse rulings on questions of fact only if they are against the manifest weight of the evidence. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002).

¶ 25                                                    C. The Act

¶ 26        The Act, which became effective on August 25, 2003 (Pub. Act 93-591 (eff. Aug. 25, 2003) (adding 820 ILCS 180)), was enacted to: (1) promote the State's interest in reducing domestic or sexual violence by enabling victims to maintain financial independence to leave abusive situations and to reduce the economic consequences of such violence to employers and employees; and (2) protect the employment and civil rights of employees or their families who are victims of domestic or sexual violence. 820 ILCS 180/15(1), (2) (West 2010).

¶ 27        Under the Act, employed victims of domestic or sexual violence and employees with family or household members who are victims of such violence may "take unpaid leave to seek medical help, legal assistance, counseling, safety planning, and other assistance without penalty from their employers." 820 ILCS 180/15(3) (West 2008). An employee may take up to 12 weeks of unpaid leave from work to address domestic or sexual violence by, *inter alia*, "seeking legal assistance or remedies to ensure the health and safety of the employee or the employee's family or household member, including preparing for or participating in any civil or criminal legal proceeding related to or derived from domestic or sexual violence."[3] 820 ILCS 180/20(a)(1)(E), (a)(2) (West 2008).

¶ 28        To take leave under the Act, the employee must, if practicable, provide the employer with

_____

[3]The other permissible bases are: (1) seeking medical attention or recovering from injuries caused by the violence; (2) obtaining services from a victim services organization; (3) obtaining psychological or other counseling; and (4) participating in safety planning, relocating, or taking other actions to increase the employee's (or the employee's family or household member's) safety from future domestic or sexual violence or to ensure economic security. 820 ILCS 180/20(a)(1) (West 2010).

at least 48 hours' advance notice of his or her intention to take such leave. 820 ILCS 180/20(b) (West 2008). The statute also contains a certification requirement, which is at issue in this appeal. "When an unscheduled absence occurs, the employer may not take any action against the employee if the employee, within a reasonable period after the absence, provides certification" as specified in the statute. *Id.* An employer may require that the employee certify that the employee or a family or household member is a victim of domestic or sexual violence and *that the leave is for a purpose enumerated in the statute*. 820 ILCS 180/20(c)(1) (West 2010). If so requested, the employee must provide the certification to his or her employer within a reasonable period after it is requested. *Id.* An employee satisfies the certification requirement:

> "by providing to the employer a sworn statement of the employee, and upon obtaining such documents the employee shall provide:
>
> > (A) documentation from an employee, agent, or volunteer of a victim services
> >
> > organization, an attorney, a member of the clergy, or a medical or other professional from whom the employee or the employee's family or household member has sought assistance in addressing domestic or sexual violence and the effects of the violence;
> >
> > (B) a police or court record; or
> >
> > (C) other corroborating evidence." 820 ILCS 180/20(c)(2) (West 2010).

¶ 29    An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under" the statute. 820 ILCS 180/20(f)(1)(A) (West 2010). Further, an employer may not discharge, harass, or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the individual exercised his or her rights under the statute or opposed any practice made unlawful by the statute. 820 ILCS 180/20(f)(1)(B) (West 2010). Specifically, an employer may not discriminate against an employee because, *inter alia*, the individual "attended, participated in, prepared for, or requested leave to attend, participate in, or prepare for a criminal or civil court proceeding relating to an incident of domestic or sexual violence of which the individual or a family or household member of the individual was a victim." 820 ILCS 180/30(a)(1)(B) (West 2008).

¶ 30    The Department administers and enforces the Act and may, upon finding a violation, award damages, equitable relief, and attorney fees and other costs. 820 ILCS 180/35(a)(1) (West 2010).


¶ 31                          D. Certification–Legitimate Purpose

¶ 32    Under the Act's certification requirement, an employer may require that the employee *certify* that: (1) the employee or a family or household member is a *victim* of domestic or sexual violence; and (2) the leave is for a *purpose enumerated in the statute*. 820 ILCS 180/20(c)(1) (West 2010). It is undisputed that plaintiff was a victim of domestic violence. Thus, here, the threshold issue concerning certification is whether plaintiff's leave was for a permissible purpose. Specifically, we first address the Director's finding that plaintiff's

absence from work on May 8, 2006, was not to seek "legal assistance or remedies to ensure the health and safety of the employee or the employee's family or household member, including *preparing for or participating in any civil or criminal legal proceeding related to or derived from domestic or sexual violence*." (Emphasis added.) 820 ILCS 180/20(a)(1)(E), (a)(2) (West 2010); see also 820 ILCS 180/30(a)(1)(B) (West 2010) (prohibiting an employer from discriminating, including discharging, or retaliating against an individual because the individual "*attended, participated in, prepared for*, or requested leave to attend, participate in, or prepare for *a criminal or civil court proceeding relating to an incident of domestic or sexual violence of which the individual or a family or household member of the individual was a victim*, or requested or took leave for any other reason provided under Section 20" (emphasis added)).

¶ 33      Again, the question here is whether plaintiff's alleged actions on May 8, 2006, constituted the seeking of "legal assistance or remedies to ensure the health and safety of [plaintiff] or [T.H.], including" *attendance*, *preparation* for, or *participation* in "any civil or criminal legal proceeding related to or derived from domestic or sexual violence." 820 ILCS 180/20(a)(1)(E) (West 2010). Plaintiff testified that she and Henderson agreed that Henderson would drop the pending custody petition if plaintiff dropped or did not proceed with the domestic battery case. Plaintiff also said that, while at the courthouse on May 8, 2006, she spoke with prosecutor Fisher about dropping the case "to make sure that there wouldn't be any charges against" Henderson. Subsequently, when she was called as a witness in the case, plaintiff did not respond, and the court entered a *nolle prosequi* order (as a result of her failure to appear). There is no suggestion in the record that the State ever refiled the charges against Henderson, and therefore he was effectively acquitted. See *People v. Watson*, 394 Ill. 177, 179 (1946); see also *People v. Daniels*, 187 Ill. 2d 301, 312 (1999) ("[a] motion to nol-pros is comparable to a motion to dismiss").

¶ 34      In her briefs to this court, plaintiff all but ignores the threshold question of legitimate purpose and focuses instead on her attempts to certify her leave and the bank's actions concerning her documentation. To the extent that she attempts to address the propriety of the leave's purpose, plaintiff challenges the Director's findings that plaintiff's testimony, especially concerning the alleged courthouse events, was not credible and thus that she was not on valid leave.

¶ 35      As to plaintiff's credibility, we conclude that the Director's findings were not against the manifest weight of the evidence. The Director did not find credible plaintiff's testimony that she was present at the courthouse on May 8, 2006. The Director specifically found that, at the hearing, plaintiff made inconsistent statements about reporting arm bruising to her health care providers; she made oral changes to a previously submitted affidavit, including about the jobs she had held and the year she took real estate courses; and that her demeanor substantially differed when testifying about the courthouse events. As to her demeanor, the Director found that, during her principal testimony, plaintiff "was nervous and imprecise or vague, but the imprecision was more authentic[;] for example, there were times when [plaintiff] was not sure which person at [the bank] did a particular act." However, when addressing the courthouse events, the Director found, plaintiff "became unnaturally precise[;] for example, she knew, without hesitation, the name of the assigned [a]ssistant State's

Attorney[;] she knew within a few minutes when court was in session and when it was not. This testimony did not compare favorably with [plaintiff's] general inability to remember correctly a specific year."

¶ 36 Plaintiff argues that the Director erred in her credibility assessment. She contends that her memory lapses were minor and involved matters of little import to the case and that the year of the real estate courses specified in the affidavit was an "irrelevant typo." She also asserts that her precise recollection of the events at the courthouse on May 8 and Labak letter No. 3 belie a finding that she was not there. Also, plaintiff challenges the Director's findings concerning her testimony about her bruising, urging that these findings were not consistent with the Director's finding that Henderson actually strangled plaintiff.

¶ 37 We reject plaintiff's claims. As to the Director's findings concerning plaintiff's bruising, plaintiff mischaracterizes the findings. The Director doubted plaintiff's credibility based, in part, on her "inconsistent statements" as to the "reporting" of the bruises. The record clearly reflects that plaintiff did not report her bruising to Dr. Kelly on December 6, 2005, but did report it to Brodermus on December 9, 2005. Further, this finding does not contradict the Director's finding that plaintiff was actually strangled by Henderson (upon which the Director found that there was "other supportive credible evidence, specifically T.H.'s testimony"), because the strangulation would not necessarily have resulted in arm bruising. (Plaintiff essentially concedes as much in her reply brief, where she states that, in the "case of strangulation, most people focus on their neck, not their arms.") Further, the Director's findings concerning plaintiff's demeanor were not unreasonable and are supported by the record. We disagree that the fact that her testimony concerning the alleged courthouse events was precise belies a finding that she was not actually there. As the Director explained, this testimony was in contrast to the remainder of plaintiff's testimony. We also cannot conclude that the Director erred in finding that plaintiff's "demeanor weighed substantially against" Labak letter No. 3 and that the fact that she did not provide the letter to the bank before her suspension or termination weighed against her. The letter referred only to plaintiff's "attendance" at the "court date" and did not specify the nature of plaintiff's alleged actions at the courthouse. (Indeed, by referring to plaintiff's attendance, it literally contradicted plaintiff's testimony that she did not attend the hearing.) In sum, we find no error in the Director's assessment that Labak letter No. 3 was of little, if any, value in corroborating plaintiff's presence at the courthouse on May 8. Finally, we also reject plaintiff's argument that her memory lapses and typographical errors were minor and irrelevant. The Director did not find them very significant, but did factor them into her overall assessment of plaintiff's credibility, as was proper. "[B]ecause the weight of the evidence and the credibility of the witnesses are within the province of the [agency], there need only be some competent evidence in the record to support its findings." *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App. 3d 180, 184 (1992). In summary, the Director's finding that plaintiff was not credible (specifically, that she was not at the courthouse on May 8, 2006) was not against the manifest weight of the evidence. Accordingly, her finding that plaintiff was not on valid leave under the Act was not clearly erroneous.

¶ 38                    E. Certification–Sufficiency of Corroborating Documents

¶ 39      Plaintiff's remaining (and primary) arguments on appeal address her efforts to document the validity of her leave: she contends that she was terminated for failing to provide corroborating evidence, a failure that was caused by the bank's interference with her statutory rights when it gave her improper legal advice that Labak could not corroborate her leave. Specifically, she argues that the bank's actions caused her to fail to give to the bank Labak letter No. 3 (wherein Labak stated that he saw plaintiff as a patient on the evening of May 8 and that she spoke about attending a court date) and that the Director erred in failing to consider that letter as corroborating evidence. Plaintiff also argues that the bank provided her a draft sworn statement that suggested that leave was available only for individuals who *participated* in a hearing and did not mention that one can take leave to *attend or prepare for* a hearing. See 820 ILCS 180/20(a)(1)(E), 30(a)(1)(B) (West 2010). She complains that the bank suggested that it would accept only a court order or a letter from her attorney as certification of her right to leave, which clearly contradicted the acceptable forms of proof listed in the statute. See 820 ILCS 180/20(c)(2) (West 2010).

¶ 40      We need not address plaintiff's remaining arguments. As to the certification requirement, again, the statute states that an employer may require that the employee certify that the employee was a victim of domestic or sexual violence, which is not at issue here, and that the leave is for a purpose enumerated in the statute, which we resolved above against plaintiff. 820 ILCS 180/20(c)(1) (West 2010). Because plaintiff was not entitled to leave under the Act (*i.e.*, she did not miss work for a statutorily enumerated purpose), we need not address the propriety of the bank's actions with respect to plaintiff's efforts to document her reasons for taking the leave. That is, plaintiff's failure to establish that she was entitled to leave under the Act precludes recovery regardless of the bank's actions in this case.

¶ 41                                III. CONCLUSION

¶ 42      For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 43      Affirmed.