**2021 IL 125785**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 125785)

THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al*., Appellants,
v. DAPHNE MOORE, Appellee.

*Opinion filed January 22, 2021.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1        The Board of Education of the City of Chicago (Board) filed dismissal charges against respondent Daphne Moore, a tenured teacher, pursuant to section 34-85 of the School Code. 105 ILCS 5/34-85 (West 2016). The notice of the charges informed Moore that she was suspended without pay pending a dismissal hearing. After the hearing, the hearing officer recommended that Moore be reinstated. The

Board adopted the hearing officer's recommendation, in part, declining to dismiss Moore. However, the Board issued a warning resolution, finding that Moore's misconduct warranted a 90-day time-served suspension with a deduction from her net back pay. Moore filed an appeal and argued that her suspension and reduction in back pay were unauthorized by law. The appellate court agreed, holding that, once termination proceedings were initiated, the Board could only dismiss Moore or reinstate her with full back pay. 2019 IL App (1st) 182391, ¶ 14. We allowed the Board's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019). For the reasons that follow, we reverse the judgment of the appellate court.

¶ 2                                    I. BACKGROUND

¶ 3        Moore had been employed as a tenured teacher by the Board since 1994, and she worked at the Charles W. Earle STEM Academy during the 2016-17 academic year.   On September 13, 2016, Moore was in her classroom when she was advised by her students that another student in the classroom had ingested some pills. Other school personnel immediately became involved in responding to the incident.

¶ 4                              A. The Dismissal Charges

¶ 5        On April 25, 2017, the chief executive officer of the Chicago Public Schools (CPS) approved dismissal charges and specifications, and the Board sent a dismissal letter to Moore stating that the charges were brought pursuant to section 34-85 of the School Code (105 ILCS 5/34-85 (West 2016)). The charges alleged that Moore failed to appropriately respond to a student's apparent overdose of medication in the classroom on or about September 13, 2016. They also alleged a failure to supervise, a failure to perform certain duties, and a failure to comply with the Board's policies and the State's ethical and professional teaching standards. The notice of charges informed Moore that the Board requested that she be suspended without pay pending the outcome of the dismissal hearing.

¶ 6                                B. The Dismissal Hearing

¶ 7        On April 27, 2017, Moore invoked her rights as a tenured teacher under section 34-85 of the School Code and requested a hearing on the charges. The dismissal hearing proceeded on March 8, 2018. On September 7, 2018, the hearing officer issued his findings and recommendations. The hearing officer found (1) that Moore had in fact alerted the administration to the student's overdose and (2) that she had not lied during the investigation of the incident. Therefore, the hearing officer concluded that the Board's evidence failed to establish cause for Moore's dismissal.

¶ 8                                 C. The Board's Opinion

¶ 9        On October 24, 2018, the Board's opinion and order partially adopted and partially rejected the hearing officer's recommended findings. In particular, the Board agreed with and adopted the hearing officer's determination that Moore should be reinstated because there was insufficient cause for her dismissal. However, the Board found that Moore failed to act in a prudent and responsible manner when she responded to the September 13, 2016, incident. The Board also found that Moore failed to check on the well-being of the student after learning that she had just ingested an unknown quantity of pills. In addition, the Board found that Moore failed to notify her colleagues in a timely fashion when the student was in distress in her classroom, which placed the student's well-being and safety in jeopardy. The Board concluded that Moore's conduct was below the level expected from a reasonably prudent teacher.

¶ 10       The Board determined that Moore's negligent behavior was remediable and, therefore, did not warrant her dismissal. However, the Board found that Moore's misconduct warranted a 90-day suspension (time served pending the hearing) without pay. Accordingly, the Board issued a warning resolution against Moore, which required her to attend training on emergency responsiveness and suicide prevention, and a "90-day reduction in the net back pay paid out to her."

¶ 11                        D. The Appellate Court Opinion

¶ 12        Moore filed a petition for administrative review of the Board's order in the
appellate court contending that the suspension and reduction in back pay were
unauthorized by law. See *id.* § 34-85(a)(8) (teacher may seek judicial review of a
board's decision pursuant to the Administrative Review Law (735 ILCS 5/3-101
*et seq.* (West 2016)), except review must be initiated in Illinois Appellate Court,
First District). The appellate court agreed with Moore and reversed the Board's
decision. 2019 IL App (1st) 182391, ¶ 26. The appellate court held that the Board
could only exercise powers conferred upon it by law and, under section 34-85, once
termination proceedings had been initiated, the Board could only dismiss or
reinstate Moore with full back pay. *Id.* ¶ 14. The court found that the Board had no
express or implied authority to conclude the dismissal proceedings by imposing a
suspension in lieu of termination. *Id.* ¶¶ 16-18. The appellate court also rejected the
Board's contention that it had the power to suspend Moore under a different section
of the School Code, finding that contention to be an impermissible *post hoc*
justification for Moore's suspension. *Id.* ¶ 19. After the appellate court filed its
opinion, the Board filed a petition for leave to appeal, and it was allowed by this
court. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019).


¶ 13                                II. ANALYSIS

¶ 14        Before this court, the Board challenges the appellate court's holding that it had
no authority to discipline Moore with a 90-day time-served suspension without pay
after it had commenced termination proceedings. The Board contends that section
34-85 of the School Code does not divest it of the ability to discipline Moore with
a suspension and reduction in back pay. The Board also contends that, under
prevailing authority, school boards have authority to impose a suspension or other
corrective measures as discipline and as a safety response. Finally, the Board
maintains that it made Moore whole for lost earnings during her prehearing
suspension, but that amount was correctly offset by the 90-day reduction in net back
pay resulting from her disciplinary suspension.

¶ 15        In response, Moore argues that the appellate court's judgment should be
affirmed because her suspension and reduction in back pay were not authorized by
the School Code. In particular, Moore contends that the 2011 amendment to section

- 4 -

34-85 of the School Code (Pub. Act 97-8 (eff. June 13, 2011)) eliminated the Board's ability to suspend a teacher at the end of a dismissal proceeding. Moore further contends that the general provision authorizing the Board to issue a suspension under section 34-18 conflicts with the specific directive of section 34-85. According to Moore, because section 34-85 is more specific, it is determinative. Moore further maintains that, on administrative review, the Board is constrained by section 34-85 as the legal basis for its decision and cannot rely on a different section of the School Code to justify her suspension and reduction in back pay. Lastly, Moore contends that the Board is statutorily prohibited from using a "retroactive" suspension to reduce her back pay.

¶ 16                              A. Standard of Review

¶ 17        The School Code provides that a final order of the Board is subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)) and that a School Board's appeal may be taken directly to the appellate court (105 ILCS 5/34-85(a)(8) (West 2016)). On administrative review, our role is to review the decision of the Board and not the determination of the appellate court. *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14. Under the Administrative Review Law, the proper standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50 (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008)). An administrative agency's findings of fact are considered *prima facie* true and may only be reversed if they are against the manifest weight of the evidence. *Id.* Questions of law are reviewed *de novo*. *Id.* Mixed questions of law and fact, where we analyze the legal effect of a given set of facts, are reviewed under the clearly erroneous standard. *Id.*

¶ 18        Whether the Board has authority to suspend and reduce the back pay of a tenured teacher, after termination proceedings have been initiated under section 34-85 of the School Code, requires us to construe the statute. A case involving statutory construction presents a question of law, which we review *de novo*. *Id.*; *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012

IL 112566, ¶ 15.


¶ 19                          B. General Principles of Statutory Construction

¶ 20         In construing the School Code, we are guided by familiar principles. Our primary objective in statutory construction is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Beggs*, 2016 IL 120236, ¶ 52 (citing *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 31). A court must view and give effect to the entire statutory scheme. *Chicago Teachers Union*, 2012 IL 112566, ¶ 15. Therefore, words and phrases must be construed in relation to other relevant statutory provisions and not in isolation. *Id.* (citing *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 268 (2010)). Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Id.* The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Id.*


¶ 21                          C. Relevant Provisions of the School Code

¶ 22         Article 34 of the School Code applies to cities having a population exceeding 500,000. 105 ILCS 5/34-1 (West 2016). The intent of the School Code is expressed in section 34-18, which provides:

> "The board shall exercise general supervision and jurisdiction over the public education and the public school system of the city, and, except as otherwise provided by this Article, shall have power:
>
> * * *
>
> The specifications of the powers herein granted are not to be construed as exclusive but the board shall also exercise all other powers that they may be requisite or proper for the maintenance and the development of a public school system, not inconsistent with the other provisions of this Article or provisions of the Code which apply to all school districts." *Id.* § 34-18.

¶ 23    Section 34-85 of the School Code outlines the procedure for termination proceedings of tenured teachers. Under that provision, a tenured teacher may only be removed for cause. *Id.* § 34-85(a). In 2011, Public Act 97-8 amended section 34-85 by adding the following language:

> "Pending the hearing of the charges, the general superintendent or his or her designee may suspend the teacher or principal charged without pay in accordance with rules prescribed by the board, provided that if the teacher or principal charged is not dismissed based on the charges, he or she *must be made whole* for lost earnings, less setoffs for mitigation." (Emphasis added.) Pub. Act 97-8 (eff. June 13, 2011) (amending 105 ILCS 5/34-85(a)(2)).

¶ 24    The 2011 amendment also added the following language to section 34-85(a)(7):

> "In the event that the board declines to dismiss the teacher or principal after review of a hearing officer's recommendation, the board shall set the amount of back pay and benefits to award the teacher or principal, which shall include offsets for interim earnings and failure to mitigate losses. The board shall establish procedures for the teacher's or principal's submission of evidence to it regarding lost earnings, lost benefits, mitigation, and offsets." *Id.* (amending 105 ILCS 5/34-85(a)(7)).

¶ 25                    1. The 2011 Amendment Did Not Limit
                            the Board's Implied Authority

¶ 26    Moore contends that the 2011 amendment to section 34-85, which provides that tenured teachers who are not dismissed "must be made whole for lost earnings, less setoffs for mitigation," eliminated the Board's implied authority to suspend Moore at the end of the dismissal proceeding. *Id.* (amending 105 ILCS 5/34-85(a)(2)). According to Moore, her suspension and reduction in back pay were unauthorized by the School Code. We disagree.

¶ 27    This court has stated that "a school board has only those powers expressly conferred upon it by the General Assembly and those that are necessary to carry into effect the powers granted by the legislature." *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 403 (1987). In *Spinelli*, this court

considered whether a local school board had authority to suspend a tenured teacher for disciplinary reasons. The court found that the relevant statutes of the School Code imposed upon a school board the duty " '[t]o adopt and enforce all necessary rules for the management and government of the public schools of their district.' " *Id.* at 404-05 (quoting Ill. Rev. Stat. 1985, ch. 122, ¶ 10-20.5). These implied powers included the power to temporarily suspend teachers. *Id.* at 405. The court also found that statutory notice and hearing requirements for dismissal for cause are not applicable to temporary suspensions. *Id.* at 406. We note that this reasoning has been adopted by courts in other jurisdictions. *Rike v. Commonwealth*, 494 A.2d 1388, 1390-91 (Penn. 1985); *Board of Trustees of Hamilton Heights School Corp. v. Landry*, 560 N.E.2d 102, 106 (Ind. Ct. App. 1990).

¶ 28    *Spinelli* was a teacher discipline case filed by a school board in Peoria County pursuant to articles 10 and 24 of the School Code, which govern cities having a population of less than 500,000. 105 ILCS 5/arts. 10, 24 (West 2016). Here, because Chicago is a city whose population exceeds 500,000, the School Board is governed by article 34. *Id.* art. 34. In light of the fact articles 10, 24, and 34 have parallel provisions, we find that the rules pronounced in *Spinelli* govern. See *In re Estate of Wilson*, 238 Ill. 2d 519, 563-64 (2010) (where statutes that deal with similar subject matter have parallel provisions, it can be assumed that the legislature was aware of the case law construing the provisions and intended for them to be construed and applied similarly); *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 468 (1989) (when interpreting statutory language for the first time it is appropriate statutory construction to consider similar enactments).

¶ 29    Moore contends that *Spinelli* is not relevant when construing the 2011 amendment to section 34-85 because it is a pre-2011 decision. However, it is a well-established principle of statutory construction that, where terms used in a statute have acquired a settled meaning through judicial construction and are retained in subsequent amendments, they are to be understood and interpreted in the same sense attributed to them by the court unless a contrary intention of the legislature is made clear. *Karbin v. Karbin*, 2012 IL 112815, ¶ 47 (citing *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397, 404 (2005)). "This is because the judicial construction of a statute becomes a part of the law, and it is presumed that the legislature in passing the law knew of the construction of the words in the prior enactment." *R.D. Masonry, Inc.*, 215 Ill. 2d at 404.

¶ 30      A related principle is that where the legislature chooses not to amend terms of a statute after judicial construction, it will be presumed that it has acquiesced in the court's statement of legislative intent. *Id.*; see *Hubble*, 238 Ill. 2d at 273-74; see also *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 172 (1976). Following the 1987 decision in *Spinelli* and the 2011 amendment to section 34-85, the General Assembly has amended section 34-18 of the School Code numerous times without excluding or changing the language judicially interpreted to provide the Board with an implied authority to issue suspensions. Thus, based on a judicial construction in *Spinelli*, the Board's implied suspension powers under section 34-18 are not limited or restricted when dismissal proceedings are commenced under the parallel provision, section 34-85, as amended in 2011. See 105 ILCS 5/10-20 (West 2016) (powers of the school board); *id.* § 24-12 (removal or dismissal of teachers).

¶ 31      Further, we find no indication that the General Assembly intended to overrule *Spinelli*. When we consider several amendments to the act without a disagreement with this court's construction, inaction by the legislature strongly suggests agreement. In light of these facts, it would amount to a usurpation of legislative power if we were to find differently. See *Union Electric Co. v. Illinois Commerce Comm'n*, 77 Ill. 2d 364, 380-81 (1979) (holding that a change in judicial construction would amount to amending the statute itself, which is a power courts do not possess).

¶ 32      In the case at bar, after a hearing and a hearing officer's recommendation, the Board issued a formal written warning resolution requiring Moore to undergo additional training on crisis response and issued a 90-day time-served suspension with a corresponding reduction in the amount of her 18 months of net back pay. Rather than dismissing Moore, the Board decided that Moore's behavior was remediable. We find this individualized response was well within the scope of the Board's implied powers under section 34-18 and *Spinelli*. 105 ILCS 5/34-18 (West 2016); *Spinelli*, 118 Ill. 2d at 405; see also *Mohorn-Mintah v. Board of Education of the City of Chicago*, 2020 IL App (1st) 182011, ¶ 27 (finding that "the Board's action to discipline [petitioner] following a dismissal hearing was a reasonable means of accomplishing their broad purpose to manage the public schools of Chicago").

¶ 33 The legislature did not prescribe procedures for suspension hearings in section 34-18. 105 ILCS 5/34-18 (West 2016). While section 34-85 prescribes procedures for the removal or dismissal of tenured teachers, the procedural notice and hearing requirements of section 34-85 are not applicable when the Board suspends a tenured teacher pursuant to section 34-18. *Id.* §§ 34-85, 34-18. Here, because the Board began the proceedings under section 34-85, Moore received the full benefit of the dismissal hearing procedures before all the facts were established. Those procedures afforded Moore the benefit of notice, being represented, cross-examining the witnesses against her, presenting witnesses in her defense, requiring the Board to establish cause for dismissal, and having a hearing officer issue recommendations, all of which are rights not afforded under section 34-18. The Board determined that a suspension, a lesser form of discipline, was an appropriate sanction for Moore's conduct. Indeed, the Board's power to make rules would be eviscerated and its ability to manage the school system would be ineffective if it could not elect to suspend a teacher when the evidence did not establish cause for a dismissal.

¶ 34 As observed in *Spinelli*:

" 'There is implied in this obligation to make rules and regulations, and to enforce them, a power in the board to mete out discipline to those who violate the rules and regulations. Enforcement envisions effective sanctions of some sort. If that were not the case, the power to make rules would indeed be a hollow one and effective management and government could not be accomplished.' " 118 Ill. 2d at 405 (quoting *Craddock v. Board of Education of Annawan Community Unit School District No. 226*, 76 Ill. App. 3d 43, 49 (1979) (Alloy, J., dissenting)).

¶ 35 Once it is determined that the evidence does not establish cause for dismissal, the Board should not be required to commence a new disciplinary proceeding under section 34-18 to suspend a teacher. Two disciplinary proceedings could not be the intent of the legislature because it would be neither efficient nor cost effective. See *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 92 (1995) (holding that an integral part of the School Code's dismissal process is a board's authority to issue a " 'notice to remedy' " when it determines that causes for dismissal are remediable); *Sweeney v.*

*Board of Education of Mundelein Consolidated High School District 120*, 746 F. Supp. 758, 765 (N.D. Ill. 1990) (holding that a school board's interests are to manage its schools and their employees and to avoid undue administrative burdens and expenses).

¶ 36       The legislative amendment to section 34-85 of the School Code became effective June 13, 2011. Pub. Act 97-8 (eff. June 13, 2011) (amending 105 ILCS 5/34-85(a)). At the time of this amendment, the legislature was fully aware that this court construed the School Code to include the Board's implied authority to suspend tenured teachers. Therefore, we hold that the 2011 amendment to section 34-85 did not eliminate or restrict the Board's long-established power in section 34-18 to suspend tenured teachers. See 105 ILCS 5/34-18 (West 2016); *Spinelli*, 118 Ill. 2d at 405; see also *Illinois Power Co. v. City of Jacksonville*, 18 Ill. 2d 618, 622 (1960) (holding that when the General Assembly amends a statute those portions of the old law that are repeated are regarded not as a new enactment but rather a continuation of the old law); see also 82 C.J.S. *Statutes* § 334, at 417 (2009) (noting that provisions carried forward and embodied in a revision in the same words will be considered a continuation of the old law).

¶ 37       Accordingly, we find that *Spinelli* supports the Board's authority to issue a 90-day disciplinary suspension without pay as a means of carrying out its mandate to keep students safe. Section 34-18 codifies the principle that the Board "shall also exercise all other powers that they may be requisite or proper for the maintenance and the development of a public school system." 105 ILCS 5/34-18 (West 2016). Consequently, section 34-85 does not eliminate the implied authority of the Board to suspend tenured teachers without pay at the conclusion of dismissal proceedings.

¶ 38                    2. Sections 34-18 and 34-85 Are Not in Conflict

¶ 39       Next, Moore argues that the general grant of powers in section 34-18 is specifically limited to actions that are "not inconsistent with the other provisions of this Article or provisions of this Code." *Id.* Moore maintains that the Board's general power to suspend under section 34-18 conflicts with the specific directive of section 34-85(a)(2) that she "must be made whole" if she is not dismissed and, therefore, the more specific section 34-85 is determinative. We disagree with this argument.

¶ 40    We observe that this court has previously held that sections of the same statute should be considered so that each section can be construed with every other part or section of the statute to produce a harmonious whole. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002) (citing *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992)); see also 2A Norman J. Singer and Shambie Singer, Statutes and Statutory Construction § 46.5 (7th ed. 2007) (discussing the doctrine of harmonious whole). This principle is consistent with the court's recognition that one of the fundamental principles of statutory construction is to view all the provisions of a statute as a whole. *Land*, 202 Ill. 2d at 422 (citing *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000)). As stated above, words and phrases must be construed in relation to other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous or meaningless. See *Chicago Teachers Union*, 2012 IL 112566, ¶ 15; see also *Land*, 202 Ill. 2d at 422 (citing *Michigan Avenue National Bank*, 191 Ill. 2d at 504). Where there is an alleged conflict between different sections of the same statute, a court has a duty to interpret those sections in a manner that avoids an inconsistency and gives effect to both sections, where such an interpretation is reasonably possible. *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 185-86 (2006) (citing *Land*, 202 Ill. 2d at 422); *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001).

¶ 41    Thus, the language in section 34-85, that a teacher who is not dismissed on charges should be made whole for income lost during the prehearing suspension, is not to be read in isolation. The Board's October 24 order reinstated Moore, with full back pay as required by the "must be made whole" language in section 34-85(a)(2). But the order then imposed a 90-day time-served suspension with a corresponding "90-day reduction in the net back pay paid out to her," pursuant to the implied power to suspend in section 34-18 of the School Code. See *Spinelli*, 118 Ill. 2d at 404-05.

¶ 42    Accordingly, considering the statute as a whole in facilitating the just and expeditious resolution of a tenured teacher's discipline case, a suspension where there is no cause to dismiss comports with the Board's authority to manage a school system by addressing the safety of students and protecting a tenured teacher's position. *Id.* at 405; *Rockford*, 165 Ill. 2d at 91. Thus, we find that the general

supervision provision in section 34-18 empowers a board to suspend a teacher and the board also has a concomitant power to dismiss a teacher for cause in section 34-85. Suspending or dismissing a teacher are sanctions authorized by the School Code that are independent of each other and do not conflict. Consequently, we hold that the suspension power in section 34-18 is not inconsistent with and does not conflict with the dismissal power codified in section 34-85. See 105 ILCS 5/34-18, 34-85 (West 2016).

¶ 43                    3. The Board Sufficiently Articulated
                            the Grounds for Its Decision

¶ 44        We next address Moore's contention that, on administrative review, the Board impermissibly changed the statutory basis for its decision. Moore argues that the Board is limited to the remedies in section 34-85 because that statute was cited in the charges and is the legal basis for the dismissal proceeding. Therefore, Moore maintains that the Board cannot predicate dismissal charges on section 34-85 but rely on its section 34-18 power to justify her suspension and reduction in back pay. We do not agree.

¶ 45        The United States Supreme Court has determined a fundamental rule of administrative law is that a reviewing court, in dealing with a determination or judgment that an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 242 (2009) (citing *Reinhardt v. Board of Education of Alton Community Unit School District No. 11*, 61 Ill. 2d 101, 103 (1975)). If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. *Chenery*, 332 U.S. at 196.

¶ 46        The Supreme Court has recognized that an important corollary of the foregoing rule is that:

        "If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the

- 13 -

agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, 'We must know what a decision means before the duty becomes ours to say whether it is right or wrong.' " *Id.* at 197-98 (quoting *United States v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 294 U.S. 499, 511 (1935)).

See also *Reinhardt*, 61 Ill. 2d at 104-05.

¶ 47    Here, the Board fully articulated the grounds for suspending Moore without pay rather than dismissing her. The Board's October 24 order specifically addressed and explained its reasoning in departing from the hearing officer's recommendations in part and imposing a remedial sanction. Once the facts were established, the Board found that Moore failed to act in a "prudent and reasonable manner." The Board determined that Moore failed to check on the well-being of the student after learning that she had just ingested an unknown quantity of pills. In addition, the Board found that Moore failed to notify her colleagues in a timely fashion when the student was in distress in her classroom, which placed the student's well-being and safety in jeopardy. The Board further determined that Moore's conduct was below the level expected from a reasonably prudent educator. However, the Board imposed a requirement for additional training on emergency responsiveness and suicide prevention, indicating that Moore's negligent behavior was remediable.

¶ 48    Moore claims that the Board's decision was inadequate. In support, Moore relies on *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 48 (1983), and *Department of Central Management Services v. Illinois Labor Relations Board, State Panel*, 2018 IL App (4th) 160827, ¶¶ 29-31, claiming that on administrative review the Board is bound to the statutory basis cited in its charges and order.

¶ 49    We find these cases to be inapposite because they rested on appeals where the agency-level decisions had not articulated nor discussed the relevant facts that led to the agency's order. The boards also failed to articulate any reason at all for their decisions. *Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 50; *Department of Central Management Services*, 2018 IL App (4th) 160827, ¶ 29. Thus, the cases that Moore cited offer no support for her contention that the Board is constrained by the statutory basis cited in its original order.

¶ 50 We find that the Board issued detailed findings and a comprehensive analysis to explain how it exercised its power. And, as explained above, the Board's power to maintain and develop a public school system includes the implied power to suspend Moore. 105 ILCS 5/34-18 (West 2016); see *Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 43 (an agency must articulate a satisfactory explanation for its action); *Cook County Republican Party*, 232 Ill. 2d at 242 (holding that the grounds for the agency's action must be clearly disclosed and adequately sustained (citing *Reinhardt*, 61 Ill. 2d at 103)). The Board has consistently relied on the same grounds for imposing discipline against Moore. Contrary to Moore's assertion, we find that the Board did not provide an impermissible *post hoc* rationalization for its decision to suspend Moore with a reduction in net back pay. Accord *Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 50 (where the agency fails to provide support for its decision below, courts may not accept counsel's *post hoc* rationalization for agency's action); see also *McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008) (holding that, if an agency's determination is supportable on any rational basis, we must uphold it, especially when an agency is acting within its own sphere of expertise). Consequently, given the Board's power to maintain and develop a school system, we reject Moore's contention that the Board impermissibly changed the basis for its decision on administrative review.

¶ 51                          4. The Board Is Statutorily Authorized
                                      to Reduce Back Pay

¶ 52 We now turn to Moore's contention that the plain language of section 34-85 prohibits the Board from using a "retroactive" suspension to reduce the back pay due a tenured teacher who prevailed on dismissal charges. Moore argues that sections 34-85(a)(2) and 34-85(a)(7) make clear that offsets from back pay refer to interim earnings and the teacher's failure to mitigate losses. Moore argues that the term "must" as used in reference to mitigation and offsets in section 34-85 is a mandatory provision that does not include penalties or other deductions that are unrelated to the teacher's efforts to earn income during the prehearing suspension. Moore contends that the School Code allows for submission of such evidence only by the affected teacher, and it makes no reference to offsets based on the Board's own determination of some lesser culpability in that same proceeding. We do not agree.

- 15 -

¶ 53     Section 34-85(a)(2) provides that a teacher who is suspended without pay pending a hearing and is not dismissed "must be made whole for lost earnings, less setoffs for mitigation." 105 ILCS 5/34-85(a)(2) (West 2016). When the Board decides not to dismiss a tenured teacher, section 34-85(a)(7) provides that the Board has the power to "set the amount of back pay and benefits to award the teacher," which includes "offsets for interim earnings and failure to mitigate losses." *Id.* § 34-85(a)(7). Accordingly, we find the Board properly exercised its statutory authority.

¶ 54     Furthermore, we find that there is nothing in the statutory language to suggest that the General Assembly intended (1) to require the Board to engage in separate proceedings for each disciplinary action regarding the same conduct or (2) to prohibit the Board from invoking its suspension powers where a teacher was found to have engaged in conduct that did not constitute cause for dismissal. See *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 105 (2000) (finding that administrative officers may validly exercise discretion to accomplish in detail what is legislatively authorized in general terms (citing *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 428 (1988))); *Mohorn-Mintah*, 2020 IL App (1st) 182011, ¶ 27 (same). In our view, it is a better use of the administrative body's resources to hold Moore's disciplinary hearing and to impose sanctions in the same proceeding. Thus, the School Code empowered the Board with discretion to dismiss or suspend a teacher at the conclusion of the disciplinary proceeding. See 105 ILCS 5/34-18, 34-85 (West 2016).

¶ 55     Moreover, we agree with the Board that, when an administrative agency issues a decision in a discipline case where a dismissal or suspension sanction can be imposed, the agency may issue a single order to carry out its statutory authority. *Lake County Board of Review*, 119 Ill. 2d at 427-28. In *Lake County Board of Review*, a taxing authority owed a property tax refund to a taxpayer, and the same taxpayer also owed a separate amount in other property taxes. This court found that the taxing authority acted properly when it issued a single order that credited the refund against the property taxes owed, netting both amounts out in a single balance. *Id.* at 426-28. The court found the procedure utilized was a reasonable means of accomplishing the broad statutory directives to the administrative officer. *Id.* at 428.

¶ 56    In the case at bar, the Board's October 24 order combined its authority under section 34-85 to make Moore whole for the prehearing suspension, after the dismissal proceedings did not result in her termination, and its authority under section 34-18 to implement a time-served suspension and "90-day reduction in the net back pay paid out to her." Accordingly, we find that the Board acted within its statutory powers, and the procedure utilizing a single order was a reasonable means of accomplishing its mandate. *Id.* (finding that wide latitude must be given to administrative agencies in fulfilling their duties). Consequently, we hold that the Board had statutory authority to reduce the amount of Moore's back pay based on her disciplinary suspension.

¶ 57                         5. Statutory Inflexibility Leads to Unjust
                                    All or Nothing Resolutions

¶ 58    In response to the Board's contention that it needs flexibility in implementing its mandate, Moore argues that this need for flexibility should be balanced against the tenured teacher's need for job protection. Moore further argues that any policy arguments regarding the practical implication of the plain statutory language should be directed to the General Assembly and not addressed in this court.

¶ 59    We find that, after eliciting and considering the facts in a section 34-85 dismissal proceeding, the Board's power to discipline teachers would be hampered if it were limited only to dismissal or reinstatement at the conclusion of such proceedings. To preclude a remedial sanction where a teacher was negligent, yet require a dismissal because the charges were brought under section 34-85 of the School Code, could lead to unjust decisions. We do not think that the legislature could have intended such a rigid, inflexible application of the School Code that would interfere with the Board's authority and discretion to prescribe individualized remediation plans in disciplinary cases. See *id.* Further, we presume that the legislature, when it enacted the School Code, did not intend absurdity, inconvenience, or *injustice* in discipline cases. *Land*, 202 Ill. 2d at 422 (citing *Michigan Avenue National Bank*, 191 Ill. 2d at 504). Consequently, we find that the Board, students, and tenured teachers would not be better served under an inflexible dismiss-or-reinstate discipline system rather than a remedial discipline

system where individualized decisions are made that are reasonable, just, and fair.

¶ 60                                    III. CONCLUSION

¶ 61        In sum, we find that the 2011 amendment to section 34-85, which governs dismissals, does not diminish the Board's implied power and authority to issue a suspension, which is governed by section 34-18, once a determination is made that the conduct does not constitute cause for dismissal. We also find that sections 34-18 and 34-85 govern two different disciplinary sanctions (dismissals and suspensions) and are not in conflict. In addition, we find that the Board acted within the scope of its power in reducing Moore's net back pay, after making her whole for the prehearing suspension in the same order.

¶ 62        Accordingly, we hold that the appellate court erred when it held that section 34-85 precluded the Board from suspending a teacher without pay following a dismissal hearing. We further hold that the Board articulated its findings and analysis for Moore's suspension and reduction in back pay, that the Board exercised its inherent power when it suspended Moore, and that the Board did not impermissibly change the basis for its decision on administrative review but invoked its power to manage the school system codified in the School Code when it imposed Moore's suspension. Consequently, we reverse the judgment of the appellate court and affirm the Board's decision.

¶ 63        Appellate court judgment reversed.

¶ 64        Board decision affirmed.