2022 IL App (2d) 220193
No. 2-22-0193
Opinion filed June 24, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CATHERINE SBARRA-HAGEE, a/k/a Catherine Sbarra, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 22-MR-190 |
| LAKE COUNTY ELECTORAL BOARD; ROBIN O'CONNOR, Individually and in Her Official Capacity as Lake County Clerk; ERIN CARTWRIGHT WEINSTEIN, Individually and in Her Official Capacity as Lake County Circuit Clerk; MELANIE K. NELSON, Individually and in Her Official Capacity as Lake County Chief Deputy Assistant State's Attorney, Civil Division; and CATHERINE KING, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable Joseph V. Salvi, |
| (Catherine King, Defendant-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue in this appeal is whether plaintiff, Catherine Sbarra, qualifies as a candidate for Lake County board member from district 18. Defendant, Catherine King, objected to Sbarra's candidacy on the basis that Sbarra did not reside within district 18 at the time she filed her

nominating papers. For the reasons herein, we determine that Sbarra was required to reside within district 18 at the time she filed her statement of candidacy to be the Republican candidate from that district in the June 28, 2022, general primary election. We therefore reverse the circuit court's judgment and affirm the Lake County Electoral Board's (Board) decision.

¶ 2                                   I. BACKGROUND

¶ 3      On March 7, 2022, Sbarra filed nominating papers to be the Republican candidate in the June 28, 2022, general primary election for Lake County board member from district 18. Her nominating papers included a statement of candidacy, attesting that as of March 6, 2022, she was legally qualified to hold such office, including that she was a registered voter residing at her declared address in Lake Zurich.

¶ 4      On March 21, 2022, King objected to Sbarra's candidacy. Her objector's petition alleged that Sbarra was not a qualified candidate, asserting that a candidate for Lake County board member had to be a resident of the district in which they sought election and that Sbarra did not reside in district 18. In Sbarra's answer to King's petition, she admitted that she did not reside within district 18.

¶ 5      The Board heard King's objection to Sbarra's candidacy, and on April 6, 2022, it sustained her objection and ordered that Sbarra's name not appear on the June 28, 2022, primary election ballot. The Board reasoned as follows. The language in section 2-3003 of the Counties Code (55 ILCS 5/2-3003 (West Supp. 2021)), that members be elected by or "from" a district, was significant. To interpret the section other than to imply a residency requirement would have undermined the County's decision and authority to require its board members to be elected from a district. To allow residency outside of districts would lead to "absurd results" where all county board members representing separate districts live in just one district.

¶ 6    The Board continued that section 25-11 of the Election Code (10 ILCS 5/25-11 (West 2020)) provided additional support to King's objection in that a vacancy occurs if a county board member moves out of district. It reasoned that there must be a requirement that a candidate for county board be a resident of the district in which they are running. Last, it determined that Sbarra had to be qualified for the office she sought at the time she submitted her nominating papers to run for the office.

¶ 7    On April 11, 2022, Sbarra filed in the circuit court a verified petition for review of the Board's decision. On May 27, 2022, the circuit court reversed the Board's decision. The circuit court determined that, under the plain language of section 2-3003 of the Counties Code, a candidate did not need to be a resident of the district they sought election from. In addition, it interpreted that section 25-11 of the Election Code applied only to vacancies created by county commissioners, and that the section's residency requirement applied to appointed, not elected, officials. It determined that the controlling provision was section 2-3015 of the Counties Codes (55 ILCS 5/2-3015 (West 2020)), which provided that in counties with a population of three million or less, a county board member was eligible for office if they were a legal voter and had been "a resident of the county for at least one year next preceding the election." Therefore, because Sbarra had been a resident of Lake County for at least one year preceding the next election at the time she submitted her nominating papers, it reversed the Board's decision.

¶ 8    This timely appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10   At issue in this appeal is whether Sbarra was required to reside in Lake County's board member district 18 at the time she filed her nominating papers to be the Republican candidate for

Lake County board member from district 18 in the June 28, 2022, general primary election. For the reasons that follow, we answer the issue in the affirmative.

¶ 11    An electoral board, such as the Board here, is viewed as an administrative agency. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). In an appeal from an administrative agency's decision, we review the decision of the administrative agency, not the decision of the circuit court. *Lombard Public Facilities Corp. v. Department of Revenue*, 378 Ill. App. 3d 921, 927 (2008). The standard of review for an administrative agency decision depends on what is in dispute: the facts, the law, or a mixed question of both. *Sustatia v. Shannon*, 2012 IL App (2d) 101230, ¶ 24. Agency rulings on questions of law are reviewed *de novo* (*Lombard Public Facilities Corp.*, 378 Ill. App. 3d at 928), and agency decisions construing statutes present questions of law (*Board of Education of City of Chicago v. Moore*, 2021 IL 125785, ¶ 18).

¶ 12    Here, the Board's decision presents a question of law. The facts are not in dispute—the parties agree that Sbarra did not reside within district 18 at the time she filed her nominating papers. The only issue before us is a matter of statutory construction: Whether the relevant statutory provisions require that a candidate for county board reside within the district they seek to represent at the time they file their nominating papers. Accordingly, our review of the Board's decision is *de novo*.

¶ 13    The primary objective in statutory construction is to ascertain and give effect to the intent of the legislature. *Moore*, 2021 IL 125785, ¶ 20. The most reliable indicator of legislative intent is the language of the statute given its plain and ordinary meaning. *Id.* In construing a statute, we must view and give effect to the entire statutory scheme, and therefore words and phrases must be construed in relation to other relevant statutory provisions, not in isolation. *Id.*

¶ 14     We must presume that the legislature did not intend an absurd result, and our interpretation of a statute must not render other statutory provisions meaningless. *Souza v. City of West Chicago*, 2021 IL App (2d) 200047, ¶ 43. Moreover, "[w]e presume that statutes which relate to one subject are governed by one spirit and a single policy, and that the legislature intended the enactments to be consistent and harmonious." *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 52-53 (1990) (determining that the general venue provision and a special venue provision under the School Code were in direct conflict and were unable to be harmonized); see *Cinkus*, 228 Ill. 2d at 218. Therefore, we are to construe statutes in harmony with one another, if reasonably possible. *Williams*, 139 Ill. 2d at 52.

¶ 15     Where the statutory language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in more than one sense. *Home Star Bank and Financial Services v. Emergency Care and Health Organization, Ltd.*, 2014 IL 115526, ¶ 24.

¶ 16     In this appeal, the parties argue over the interpretation of several statutory provisions. First, they disagree on the interpretation of section 2-3003(1) of the Counties Code (55 ILCS 5/2-3003(1) (West Supp. 2021)). Section 2-3003(1) provides, in relevant part, that "[i]f the county board determines that members shall be elected by districts, it shall develop an apportionment plan and specify the number of districts and the number of county board members to be elected *from* each district." (Emphasis added.)

¶ 17     King argues that the language "elected from each district" gives rise to a residency requirement applicable to county board members. She contends that a residency requirement is the only reasonable interpretation of the phrase "from each district," although she concedes that

"from" is "doing a lot of work" in that sentence. Sbarra responds that section 2-3003(1) has nothing to do with residency requirements or qualifications for board members generally. She argues that section 2-3003(1) is instead exclusively concerned with apportionment plans.

¶ 18    Next, the parties disagree on the interpretation of section 25-11 of the Election Code (10 ILCS 5/25-11 (West 2020)). Section 25-11 provides:

> "When a vacancy occurs in any elective county office *** notification thereof shall be given to the county central committee or the appropriate county board or board of county commissioners district committee of each established political party within 3 days of the occurrence of the vacancy. The vacancy shall be filled within 60 days by appointment of the chair of the county board or board of county commissioners with the advice and consent of the county board or board of county commissioners. *** In the case of a vacancy in a seat on a county board or board of county commissioners which has been divided into districts under Section 2-3003 or 2-4006.5 of the Counties Code,[] the appointee must also be a resident of the county board or county commission district. If a county commissioner ceases to reside in the district that he or she represents, a vacancy in that office exists."

King asserts that section 25-11 is instructive for two reasons: First, the section requires that a county board appointee to a vacancy must reside within the district appointed, and second, it provides that a vacancy exists when a county board member ceases to reside in their district. On the first point, she argues that it would not make sense to require greater qualifications for an appointee than for an elected board member. On the second point, she acknowledges that the statute recognizes a vacancy when a *commissioner* ceases to reside in the district, but she argues that we should interpret "commissioner" to include board members for several reasons, including that "commissioner" is undefined. She contrasts "commissioner" with the term "board member,"

which is defined in the Counties Code (see 55 ILCS 5/2-3001(d) (West 2020)). She further argues that interpreting the statute otherwise would lead to an absurd result where a board member could move to California and remain in office until their successor was elected.

¶ 19 Sbarra responds that section 25-11 does not support that a vacancy occurs when a county board member ceases to reside in their district. She argues that section 25-11 concerns the filling of vacancies by *appointment*, and it does not speak to any residency requirement for elected county board members. She further argues that section 25-11 provides that a vacancy exists only when a commissioner ceases to reside in their district, and it is silent as to board members.

¶ 20 The last statutory provision that the parties disagree on is section 2-3015 of the Counties Code (55 ILCS 5/2-3015 (West 2020)). Section 2-3015 provides: "In counties with a population of 3,000,000 or less, no person is eligible to hold the office of county board member or commissioner unless he or she is a legal voter and has been a resident of the county for at least one year next preceding the election." Sbarra argues that section 2-3015 is the only residency requirement for county board members to qualify to run for office, and it requires residency in only the county, not the district. King disagrees that section 2-3015 is the only residency requirement, arguing that this section applies regardless of whether a county chooses to elect board members by district. She directs us back to section 2-3003(1), which she argues creates an additional residency requirement when a county chooses to elect board members by districts.

¶ 21 We disagree with King's argument that section 2-3003(1) creates a residency requirement for county board members. First, "from" has multiple meanings, including a function word to indicate a starting point of physical movement, a function word to indicate the physical separation, and a function word to indicate the source, cause, agent, or basis. *From*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/from (last visited June 22, 2022). It does not

necessarily indicate residence or habitation. To wit, if a county board member were statutorily permitted to reside outside of their elected district and did so, that board member would still be the board member *from* that district.

¶ 22    Moreover, in the same act and article of the Counties Code, the legislature has recognized that "from" alone does not imply residency. In section 2-4006.5(d) of the Counties Code (55 ILCS 5/2-4006.5(d) (West 2020)), the legislature uses the term "from and residing in" no less than five times with relation to county commissioner districts. At the end of section 2-4006.5(d), the legislature also specifies that "[e]ach commissioner must reside in the district that he or she represents from the time that he or she files her nomination papers until his or her term expires." Thus, had the legislature intended to include residency requirements for board members in section 2-3003(1), it knew how to do so, but it chose not to. Accordingly, the plain language of section 2-3003(1) does not require that board members reside in the district that they run in.

¶ 23    We also reject King's argument that section 25-11 implies that a vacancy is created when a board member ceases to reside in their district. The plain language is that a vacancy exists *if a county commissioner* ceases to reside in the district they represent. Within the same paragraph as its language about commissioners and vacancies, section 25-11 explicitly refers to members of the county board twice and uses the phrase "county board or board of county commissioners" five times. One such use of "county board or board of county commissioners" is in the sentence immediately preceding the language about when a commissioner ceases to reside in a district. See 10 ILCS 5/25-11 (West 2020) ("In the case of a vacancy in a seat on a *county board or board of county commissioners* which has been divided into district under section 2-3003 or 2-4006.5 of the Counties Code ***." (Emphasis added.)). Thus, throughout section 25-11, the legislature once again demonstrated that it knew how to use language to distinguish two different ideas: it

consistently referred to county boards and their members separately from county commissioners, and it chose not to say that board members create a vacancy by ceasing to reside in a district.

¶ 24 Our analysis does not end here, however. King raises the hypothetical of a county board member who moves to California and yet does not vacate their office. Contrary to King's argument, we have determined that such a situation is not addressed by section 2-3003(1) of the Counties Code, nor is it addressed by section 25-11 of the Election Code. Instead, it is addressed directly by section 25-2(4) of the Election Code (10 ILCS 5/25-2(4) (West 2020)), which both parties fail to cite.

¶ 25 Section 25-2 provides for events on which an elective office becomes vacant, and section 25-2(4) provides that such events include an elected official "ceasing to be an inhabitant of the State; or *if the office is local, his or her ceasing to be an inhabitant of the district *** for which he or she was elected.*" (Emphasis added.) *Id.* "District" is defined by section 1-3 of the Election Code (10 ILCS 5/1-3 (West 2020)), and it expressly includes "county board districts." Moreover, "inhabitant" is generally understood to be synonymous with "resident." See *inhabitant*, Merriam-Webster.com, https://www.merriam-webster.com/thesaurus/inhabitant (last visited June 22, 2022); see also *inhabit*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/inhabit (last visited June 22, 2022) ("to occupy as a place of settled residence or habitat: live in").

¶ 26 Thus, section 25-2(4) of the Election Code provides that if a county board member ceases to reside in the district for which they were elected, whether by moving to California or simply moving to another county board district, a vacancy occurs in that county board member's office. When such a vacancy occurs pursuant to section 25-2(4), section 25-11 of the Election Code (10 ILCS 5/25-11 (West 2020)) provides that the county board shall declare that the vacancy exists,

and the county board chair shall fill the vacancy by appointment with the advice and consent of the county board. Section 25-11 further requires that when a county elects its board members by districts apportioned pursuant to section 2-3003 of the Counties Code (55 ILCS 5/2-3003 (West Supp. 2021)), the appointee to the county board must be a resident of the county board district.

¶ 27    We recognize that the plain language of section 25-2(4) Election Code does not explicitly require that a candidate for county board reside in the district for which they seek election—only that a vacancy occurs if an elected board member ceases to inhabit or reside in their district. However, if we were to permit a candidate such as Sbarra to run for county office, she would trigger a vacancy immediately upon assumption of that office. In other words, we would have different qualifications for a county board candidate than a county board member.

¶ 28    Our supreme court has rejected such an outcome. In *Goodman v. Ward*, 241 Ill. 2d 398, 408-09 (2011), the court interpreted section 7-10 of the Election Code (10 ILCS 5/7-10 (West 2020)). Section 7-10 requires that a candidate support a nomination petition with a sworn statement of candidacy "attesting that he or she 'is qualified for the office specified.' " *Goodman*, 241 Ill. 2d at 408 (quoting 10 ILCS 5/7-10 (West 2008)). The court interpreted section 7-10's phrase "is qualified for the office specified" to require that candidates "meet the qualifications for the office they seek, including the residency requirement, at the time they submit the statement of candidacy which must accompany their nominating papers." *Id.* The court reasoned that the legislature used present tense verbs in section 7-10, evincing an intent that candidates meet the qualifications for office at the time they file a nomination petition. *Id.* at 408-09. It stated that "[n]o principle of English grammar or statutory construction permits an interpretation of the law which would allow candidates to defer meeting the qualifications of office until some later time." *Id.* at 409.

¶ 29 In further support, the court cited *Cinkus*, 228 Ill. 2d at 219, which had interpreted "identical language" in section 10-5 of the Election Code (10 ILCS 5/10-5 (West 2006)) to the language contemplated in section 7-10. *Goodman*, 241 Ill. 2d at 409. Specifically, the *Cinkus* court examined the phrases "Each statement shall *** state that the candidate is qualified for the office specified" and "I am legally qualified to hold such office." *Cinkus*, 228 Ill. 2d at 219. The *Cinkus* court reasoned that those statements supported that a candidate was asserting that they were qualified for office at the time of submitting their nominating papers—not thereafter. *Cinkus*, 228 Ill. 2d at 219-20. We note that although *Goodman* involved the candidacy for a circuit judge, section 7-10 applies to many different offices, including county board members elected from districts. See 10 ILCS 5/7-10(a)-(k) (providing the number of signatures required on a nomination petition for different offices, including county office, statewide office, congressional office, municipal or township office, and judicial office).

¶ 30 Under *Goodman*'s interpretation of section 7-10 of the Election Code, Sbarra was required to meet the qualifications for county board member from district 18 at the time she filed her statement of candidacy. The only explicit qualifications for county board member in the Counties Code are found in section 2-3015 (55 ILCS 2-3015 (West 2020)), which were that she be a legal voter and a resident of the county for at least one year next preceding the election. There is no dispute that Sbarra met those qualifications at the time she filed her statement of candidacy. However, there is also no dispute that she was not a resident of county board district 18 at the time. Therefore, if Sbarra were to win the general election for county board member from district 18, a vacancy in her office would immediately occur pursuant to section 25-2(4) of the Election Code (10 ILCS 5/25-2 (West 2020)), which is tantamount to a disqualification. Nor could she move into district 18 after filing her statement of candidacy; such a move would contravene *Goodman*'s

precedent that nominees must swear to their qualifications for their office sought at the time they file their statement of candidacy.

¶ 31 At this juncture, we are mindful of our rules of statutory construction. Of particular relevance here, we presume that the legislature did not intend an absurd result, we avoid interpretations that render other statutory provisions meaningless, and we presume that the legislature intended statutory enactments which relate to one subject to be consistent and harmonious. *Supra* ¶ 14.

¶ 32 Applying these principles, we interpret section 2-3015 of the Counties Code (55 ILCS 5/2-3015 (West 2020)) to include a conditional qualification: If a county elects its board members by district, a person must also be a resident of the county board district for which they seek election at the time that person files their statement of candidacy.

¶ 33 This interpretation avoids the absurd result where a candidate is eligible to run for office but not to hold office—a result our supreme court rejected in *Goodman*. Furthermore, our interpretation does not render any statutory provision meaningless. The qualifications in section 2-3015 retain meaning: To be eligible for the office of county board member, the person must still be a legal voter and a resident of the county for at least one year next preceding the election. The county residency requirement is not redundant with a district residency requirement, because counties do not have to elect board members by district. In fact, a county will be required to elect board members at large if the county fails to file an apportionment plan with the county clerk. 55 ILCS 5/2-3006 (West 2020).

¶ 34 Our interpretation of section 2-3105 also harmonizes with the relevant provisions of the Election Code. For one, our interpretation aligns with the plain language of section 25-2 of the Election Code (10 ILCS 5/25-2 (West 2020)) and our supreme court's interpretation of section 7-

10 of the Election Code (10 ILCS 5/7-10 (West 2020)), in that a candidate will have the same residency requirement to run for office as to hold office. Moreover, our interpretation is consistent with section 25-11 of the Election Code (10 ILCS 5/25-11 (West 2020)), in that both appointed and elected county board members from counties divided into districts must reside in the district they are appointed or elected from.

¶ 35    Under our interpretation of section 2-3015, Sbarra did not meet the eligibility requirements to run for county board member from district 18 in the general primary election. Lake County is a county with population less than three million and is divided into districts, and Sbarra admits she did not reside in district 18 at the time she filed her statement of candidacy. In reaching this determination, we do not answer whether section 2-3015's one-year residency requirement should apply to residency in the district. Our decision rests on our determination that Sbarra did not reside in district 18 at the time she filed her nomination papers.

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, we reverse the judgment of the circuit court of Lake County and affirm the decision of the Lake County Electoral Board.

¶ 38    Circuit court judgment reversed; board decision affirmed.